(No. 31106.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LAWRENCE KELLY, Plaintiff in Error.

*Opinion filed November 22, 1949.*

Roman Posanski, and Frank P. Kays, both of Chicago, for plaintiff in error.

Ivan A. Elliott, Attorney General, of Springfield, and John S. Boyle, State's Attorney, of Chicago, (John T. Gallagher, Peter G. Kuh, and Lewis W. Gordon, all of Chicago, of counsel,) for the People.

Mr. Justice Crampton delivered the opinion of the court:

A grand jury in Cook County indicted Edward Koch, Lawrence Kelly, and Edward Prendergast for the armed robbery of John Williams on May 8, 1948. Prendergast obtained a severance; Koch and Kelly were tried together

before a jury and found guilty. Kelly was sentenced to the penitentiary for a term of three to ten years and is the only one in this court on the writ of error.

The afternoon of Saturday, May 8, between 3:30 and 3:45 o'clock, two men entered Williams's real-estate office at 6610 South Halsted Street, Chicago, when the only occupant was Eugene Giuntoli. The latter subsequently identified Kelly and Koch as the two men. While Koch engaged Giuntoli in conversation and Prendergast acted as a "lookout," Kelly displayed a revolver, announced that their visit was a "stick up," went over to the office safe, and took $300 therefrom. Williams came in and Kelly marched him to a rear room and took $30 from him. Right after this Roy E. Nelson came into the office, and Kelly escorted him to the same room and relieved him of his initialed billfold and $20 therein. Koch, in obedience to Kelly's order, brought Giuntoli to where Williams and Nelson were. The three men were then taken to the furnace room, made to face a wall with their arms in the air, and told to remain that way for ten minutes. Kelly and Koch left by the front door and turned north towards Sixty-sixth and Halsted, then west at that corner to Sixty-sixth and Green streets one block where Williams and Giuntoli, who had pursued them, saw Kelly and Koch enter an automobile and drive north on Green. A bystander copied the license number of the automobile and the number was turned over to the police. Prendergast, having separated from Kelly and Koch, was not with them in the automobile. Investigation established the license number was assigned to an automobile belonging to Kelly. The police, after further investigation, went to where Kelly lived about 9 o'clock in the evening of May 8. When a police officer was admitted to the apartment by Kelly's wife, he was found in bed. Kelly was taken to the Englewood police station and placed in a line of persons at a show-up. Williams and Giuntoli then looked at all, and

each picked Kelly as one of the robbers. Two revolvers left by Kelly that Saturday afternoon with a tavern keeper in the vicinity of his home were recovered by the police.

On Monday morning, May 10, the police arrested Koch at his place of employment and took him to the station, where he confronted Kelly, Williams, Nelson, and Giuntoli. Koch was identified as one of the three robbers. Kelly was a foreman while Koch and Prendergast were employees of the American Metal Decorating Company at 6210 South Racine Avenue, which is about ten and one-half blocks from the real-estate office. Kelly and Koch interposed separate alibis in defense, each maintaining he was present at his place of employment continuously for a period embracing time prior, during, and subsequent to the robbery.

The People, through the testimony of police officers, presented evidence of two written confessions, the first made by Kelly alone, the second by Kelly and Koch, but neither one was signed by either defendant. The different police officers concerned orally told the jury of the time and manner of the taking of the statements, and of the contents of each; all this without any objection from either defendant that the court hold a hearing, without the jury, in order to make a prior determination whether each confession had in fact been voluntarily made. Such objection was not made until after the contents of both statements were fully communicated to the jury by the oral testimony of the witnesses on direct and cross-examination, and the People had asked the trial court to allow the two written instruments of confessions in evidence. The People and defendants stipulated that the testimony given by those witnesses before the jury, concerning the manner in which the two statements were taken, should stand as testimony given before the court, alone, on the matter of their admissibility in evidence as confessions. The first confession

(People's Ex. No. 5) was allegedly made by Kelly alone in the presence of four police officers on Sunday night. The second confession (People's Ex. No. 2) was allegedly made on Monday morning by Kelly and Koch in the presence of two police officers, Williams, Giuntoli, and Nelson. The trial court, after hearing testimony away from the jury, refused to allow the first confession to be read to the jury because it was the confession of Kelly alone, and he was being tried jointly with Koch. The second confession was admitted.

In this court the defendant attacks the competency of the second confession for two reasons: (1) he did not make it; (2) he did make it, but it was an involuntary confession because it resulted from police brutality, unlawful detention, failure to advise him of his constitutional rights, a refusal to allow him to see his attorney, wife, and friends, and was a "cover-up" for the allegedly illegal first confession. The two main reasons cannot be reconciled. Perusal of the evidence as to whether he made a confession at all shows beyond all doubt the trial court was warranted in believing Kelly did make the two confessions. The confessions having been established as items of fact, the trial court on the preliminary hearing determined the second one was made voluntarily. The alleged brutalities complained of pertain directly to the obtaining of the first confession and indirectly to the obtaining of the second one by reason of the rule announced in *People* v. *Thomlison*, 400 Ill. 555, namely, that a confession unlawfully secured serves to render a later one made under the same constraint, and apparently voluntary, inadmissible. All of the testimony in support of the defendant's charge of brutality does not, when compared with the denial testimony produced by the People, warrant the belief the first confession was obtained from defendant by the brutal means alleged to have been used. Therefore, the second confession is free of such taint.

The defendant alleges an unlawful detention, which, he avers, should be taken into consideration in determining whether the second confession was made voluntarily.

No cases are cited that support the contention, and the point is purely argumentative and without factual foundation.

Defendant alleges he was not advised of his constitutional rights in regard to making a confession, under the constitutional provision that "no person shall be compelled in any criminal case to give evidence against himself." (Const. 1870, art 2, sec. 10.) The fact that the prisoner was not warned that the confession might be used against him did not render it inadmissible. (*People* v. *Fox,* 319 Ill. 606; *People* v. *Goldblatt*, 383 Ill. 176.) Coupled to this the defendant charges his family, friends and lawyer were denied access to him. We fail to discern why such refusal in this instance could be a factor which contributed toward establishing that the second confession was not a voluntary one.

The third main contention that the second confession was not voluntary is that it was a device to hide the alleged illegal treatment inflicted upon him to get the first confession. That contention brings us back to the rule in *People* v. *Thomlison,* 400 Ill. 555, stated herein. Our decision that the first confession was not the result of any brutal treatment of the defendant effectively disposes of the idea the second one was designed to hide the alleged illegal treatment attendant on the first confession.

The trial court did not err in admitting the second confession. The evidence in regard to whether the first or second was voluntary or involuntary leaves no room for doubt. The first and second confessions were voluntarily given.

Reversible error is charged to have been committed when the trial judge proceeded to question some of defendant's witnesses on particular items of testimony in a

manner allegedly highly prejudicial to defendant. The point is not before this court, for no objection was made to the questions when asked. The trial court is charged with having denied to defendant his right to a fair trial and to due process of law under the Federal and Illinois constitutions. This point is predicated upon defendant's denial of ever having made a confession to the police or anyone, and the failure of the trial court to instruct the jury on this issue of whether a confession was made. The charge is also made that the use of confessions unlawfully procured, as in this case, causes the entire proceeding to become void; that due process is denied thereby; and that the trial court also loses jurisdiction of the cause. There is no merit in the contentions for several reasons: (1) Both confessions were made, and voluntarily given; (2) the defendant negatives the point by urging he never confessed to the police or anyone; (3) the case of the People did not rest solely upon the two confessions in order to warrant the jury in returning a verdict of guilty. Admission in evidence of confessions voluntarily given does not amount to a violation of defendant's right to a fair trial or to denial of due process under the Federal constitution. Had the admission in evidence of the second confession been erroneous, such would not have presented a constitutional question, for constitutions are not guarantors against erroneous decisions. *Abrams* v. *Awotin*, 388 Ill. 42.

The defendant charges his detention from Saturday night to Tuesday morning constituted an abuse of constitutional due process alleging he was held incommunicado all that time. His wife and sister-in-law saw him on Monday after the police had completed their case against the three men, and they were not prevented from conversing with him. The crime was not fully solved until after the second confession was obtained, for Koch was not arrested until that morning. The two defendants were brought before a municipal court judge, sitting as an examining

magistrate, on Tuesday morning. There was no unnecessary delay in arraigning the defendants, so that circumstance did not militate against defendant afterward having a fair trial.

Defendant argues that prior to his being asked for a statement, or confession, it was the legal duty of the police authorities having him in custody to advise him of his constitutional rights, tell him that any statement he made would be used against him, and insure he was given the opportunity to engage legal counsel. These matters are antecedent to a trial, but are not necessarily precedent facts to be complied with in order that the subsequent trial shall be a fair one. There is no·mandatory constitutional or statutory requirement under such circumstances that a prisoner be advised of his right to have counsel," (*People* v. *Bute,* 396 Ill. 588,) and that his confession might be used against him. (*People* v. *Fox,* 319 Ill. 606.) His constitutional right to a fair trial was denied him, he believes, because he was arrested without a warrant when at peace in his own home, his confession was extracted from him while under unlawful detention, and he was not advised of his constitutional rights. The police officer was admitted to the home of defendant by the latter's wife. The officer at the time knew the armed robbery had taken place, and he had reasonable ground to believe the defendant, whom he was about to arrest, was implicated in the crime. The belief was such as would influence the conduct of a prudent man under the circumstances. The arrest was not unlawful, (*People* v. *Euctice,* 371 Ill. 159,) and it could not have any bearing upon whether defendant subsequently had a fair trial. The defendant negatives the extraction of a confession by steadily maintaining he never confessed to anyone. Furthermore, his detention was not unlawful, for section 7 of division 6 of the Criminal Code (Ill. Rev. Stat. 1947, chap. 38, par. 660,) does not require

that courts of committing magistrates shall be open on Saturday night, Sunday, and Sunday night in order to enable peace officers to bring an arrested person before one for arraignment when, during all that time, the crime committed has not been fully solved in respect to the identity of other participants, and the arrested person's connection therewith is still under investigation.

The defense was an alibi, and defendant charges he was not proved guilty beyond a reasonable doubt. There is no need to give a synopsis of the evidence for and against defendant and his alibi. From our examination of the whole record we find sufficient proof to warrant the finding of the jury establishing defendant's guilt beyond a reasonable doubt.

Complaint is made of an instruction given for the People wherein the jury was informed it was the sole judge of the credibility of the witnesses, and if the jury believed from the evidence that any witness has willfully sworn falsely to any material matter in the case the jury may disregard the entire testimony of such witness except in so far as it may be corroborated by other and credible evidence or by facts and circumstances in evidence. The defendant argued that this instruction is like given instruction 19 of the People, complained of in *People* v. *Arcabascio,* 395 Ill. 487, and which this court held could only confuse the jury under the very close facts pertaining to the defense of self-defense. The two instructions are very close kin but the confusion which arose from the giving of the instruction in the *Arcabascio case* could not arise when it was given in this case. The wrongful giving of the instruction does not by itself constitute reversible error; whether the defendant is unduly prejudiced in his defense by the giving of the instruction must depend upon the facts and circumstances of the particular case when compared with the given and refused instructions.

290

Questions are raised over the giving of, or refusing to give, other instructions. While there may not be an entire absence of error, our examination of the given instructions, taken as a series, shows the jury to have been fully and accurately instructed, and that the defendant was in nowise prejudiced in the presentation of his defense to the extent of requiring reversal.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*