Clarence E. **WATSON**, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 13689.

United States Court of Appeals District of Columbia Circuit.

Argued June 10, 1957.

Decided Aug. 19, 1957.

Mr. Albert J. Ahern, Jr., Washington, D. C. (appointed by the District Court), for appellant.

Mr. John D. Lane, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., Lewis Carroll and Frederick G. Smithson, Asst. U. S. Attys., were on the brief, for appellee.

Before PRETTYMAN, DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

Appellant was convicted on two counts charging respectively, murder in the first degree, and murder while attempting to perpetrate a rape. He asks reversal on the ground that the District Court erred in the denial of his motion to suppress the use in evidence of certain articles of clothing seized without a search warrant from appellant's apartment in that the Government had failed to establish a waiver of appellant's Fourth Amendment rights or a voluntary consent to the search, free from duress or coercion, and further in that information concerning the clothing had been elicited during a period of illegal detention.[1] Again, he claims error in

1. The trial judge filed an opinion as to the points raised. United States v. Watson, D.C.D.C.1956, 146 F.Supp. 258.

that the court over objection received detailed evidence as to a reenactment of the crime, conducted by police during a period of detention said to be illegal on account of unreasonable delay in arraignment. Underlying the foregoing and various other alleged errors is appellant's claim that the trial judge misconstrued and misapplied our opinion reversing an earlier conviction.[2] The facts are substantially stated in that opinion, and we will presently make only such cursory references as have bearing upon the case in its present posture.

■■■■ Ordinarily when an accused seeks to suppress the use of evidence against him, he must establish the illegality of its procurement. But when the movant has shown that his home has been searched without a warrant and the Government relies upon a waiver or consent, the Government has the burden of convincing the court by clear and positive testimony that there was no duress or coercion, actual or implied.[3] The burden on the Government is particularly heavy where the individual is under arrest.[4] Here the accused, in the course of reenactment of a vicious crime, handcuffed to a policeman and accompanied by several other officers, is said to have agreed voluntarily to take the officers to his apartment and to turn over clothing he had been wearing at the time of the offense. We have sufficiently spelled out in the cases cited the rule which must govern in such situations. We need not review that part of the record upon which the trial judge decided that waiver and consent had been established, for we are bound to reverse the conviction on another and controlling ground.

■■■ Since this case was argued on June 10, 1957, the Mallory case has been decided.[5] The circumstances there narrated so closely parallel those in the instant case that we see no basis for distinction. The Court has analyzed the Rules [6] and their application, step by step, pointing out finally that an arrested person must be arraigned "before a judicial officer as quickly as possible so that he may be advised of his rights and so that the issue of probable cause may be promptly determined." Supplementing the *affirmative* command of the Rules, the Court tells us that the accused "is not to be taken to police headquarters *in order to carry out a process of inquiry* that lends itself, even if not so designed, to *eliciting damaging statements* to *support* the *arrest* and ultimately his guilt." (Emphasis supplied.) Apparently, there may be some brief delay as the accused is to be "booked," and under some circumstances before arraignment the police may check on statements volunteered by the accused which are susceptible of quick verification through others. But he is not to be

2. Watson v. United States, 1956, 98 U.S. App.D.C. 221, 234 F.2d 42.

3. Judd v. United States, 1951, 89 U.S.App. D.C. 64, 190 F.2d 649.

4. Id., 89 U.S.App.D.C. at pages 65–66, 190 F.2d at pages 650–651; cf. Rigby v. United States, 1957, 101 U.S.App.D.C. 178, 247 F.2d 584; Higgins v. United States, 1954, 93 U.S.App.D.C. 340, 209 F.2d 819; Nelson v. United States, 1953, 93 U.S. App.D.C. 14, 208 F.2d 505, certiorari denied 1953, 346 U.S. 827, 74 S.Ct. 48, 98 L.Ed. 352.

5. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, reversing Mallory v. United States, 98 U.S.App. D.C. 406, 236 F.2d 701. Our opinion there, in note 3, had cited several cases including Watson v. United States, supra, note 2, which had spelled out our

understanding of the rule which we believed should govern in such situations, especially as to applicability of the term "unnecessary delay." Clearly the Supreme Court had before it reference to cases in which the subject had been extensively treated; just as clearly our view has been rejected. Cf. Rettig v. United States, 1956, 99 U.S.App.D.C. 295, 302, 305, 239 F.2d 916, 923, 926, En Banc, setting forth that in the opinion of five members of this court, the McNabb rule called for exclusion of inculpatory statements by the accused only after a showing that the disclosures were produced by and the result of an illegal detention and hence, elicited through illegality, constituted "fruits of wrongdoing" by the officers.

6. Fed.R.Crim.P. rules 4(a), 4(b), 5(a), 5(b), 5(c), 18 U.S.C.A.

taken to headquarters for the *purpose* of being subjected to interrogation in order to determine whether he shall be charged, and thereafter be convicted out of his own mouth. He is not to be subjected to inquiry or to a course of conduct which even unintentionally lends itself to "eliciting" inculpatory statements upon which to predicate his arrest and his conviction. Moreover, the Court warns, if circumstances should justify a brief delay between arrest and arraignment, it "must not be of a nature to give opportunity for the *extraction* of a confession." [7]

With the foregoing in mind, the Court denied sanction to the Mallory delay in the course of which Mallory confessed, for there had been no arraignment with its accompanying judicial warning. Thus his conviction was voided.

 In like manner we are bound to apply the Mallory rule in the instant case. Watson had been apprehended at 6:40 P.M. upon returning to his home from his place of employment. Thereafter, he was not that day arraigned. During the evening and part of the night he was questioned, denying guilt until about 3:15 A.M., when he made the first oral inculpatory disclosures. They were repeated to various officers next morning before 9 A.M. when the courts in the District were open. Many judges were available, but Watson was not presented before any of them. After 9 in the morning, still without arraignment and lacking judicial warning, the accused reenacted the crime, and accompanied by the police, went to his apartment where the police obtained the articles of clothing later offered in evidence against him. The situation in this particular was not unlike that presented in Mallory, where

this court had concluded that "the consent was an immediate accompaniment to a confession of the crime and derives color from the confession." [8] Some hours later he was arraigned. Thus, his admissions, his reenactment of the crime, his consent to the visit to his apartment and his turning over the clothing were all unwarned, and the evidence had been so developed during a period following by many hours his arrest the previous evening. All must fall together, as Mallory v. United States [9] requires, for he was not arraigned until "judicial caution had lost its purpose."

Appellant assigned various other claims of error which we need but mention. For example, he contended there was no independent evidence to corroborate his admissions as to the attempted perpetration of rape, and hence the *corpus delicti* on this aspect of the case was not proved. Relying upon the doctrine of "completeness," he attacked a ruling of the trial judge curtailing cross-examination designed to show the inconclusive nature of the polygraph tests to which appellant had voluntarily submitted during the early morning hours of his detention. He complained that the trial judge improperly ruled against the defense when he restricted cross-examination as to why the officers who received the appellant's oral admissions had not reduced them to writing at the time they were made. The judge admonished that appellant might be "opening the door" to admissibility of appellant's written confession which we previously ruled had been improperly received at the last trial. Such claimed errors, like others directed to the denial of certain requested instructions, were related in one way or other to the appel-

---

7. Cf. United States v. Mitchell, 1944, 322 U.S. 65, 69, 64 S.Ct. 896, 989, 88 L. Ed. 1140, where Mr. Justice Frankfurter pointed out: "Within a few minutes of his arrival at the police station, Mitchell admitted guilt, told the officers of various items of stolen property to be found in his home and consented to their going to his home to recover the property." Though illegally detained thereafter

for eight days before arraignment, Mitchell's disclosures were found by the Court not to have been "elicited through illegality."

8. 98 U.S.App.D.C. at page 409, 236 F.2d at page 704.

9. Supra [354 U.S. 449, 77 S.Ct. 1360], note 5.

lant's admissions which we have already recognized must be excluded under the Mallory case.

There is no point to further discussion for it is clear that we must reverse.

Reversed.