Milton Leo **MALLORY**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 14023.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 18, 1957.

Decided March 31, 1958.

Petition for Rehearing In Banc Denied April 24, 1958.

Mr. E. Lewis Ferrell, Washington, D. C., with whom Mr. Thurman L. Dodson, Washington, D. C., was on the motion, for appellant.

Messrs. Lewis Carroll and E. Tillman Stirling, Asst. U. S. Attys., with whom Mr. Oliver Gasch, U. S. Atty., was on the answer, for appellee.

Mr. Thomas A. Flannery, Asst. U. S. Atty., entered an appearance for appellee.

Before PRETTYMAN, WILBUR K. MIL-LER, and BAZELON, Circuit Judges.

PRETTYMAN, Circuit Judge.

Mallory was indicted, tried by jury, and convicted upon a charge of carnal knowledge of an eight-year-old girl. He was sentenced to serve two to seven years' imprisonment. He appealed and then filed a motion to remand to the District Court for consideration under Mallory v. United States.[1] The matter is before us now on that motion.[2] At the trial of our present appellant, Milton Leo Mallory, certain confessions were admitted in evidence. His point now is that the receipt of those statements was error.

The offense allegedly occurred somewhere around seven or seven-thirty on Thanksgiving night, 1956. The child immediately reported the affair to her mother, who called the police. Officers responded to a radio call at 7:53 p. m. They found Mallory in the neighborhood and after a brief inquiry sent him by car to police headquarters. Mallory testified he had drunk a fifth of wine that afternoon and was "pretty high". The police testified he was incoherent. Officers searched the room where the child said the offense took place, finding there a cigarette lighter which was later identified by Mallory as belonging to him. The police sent the child to a hospital, where she was examined. At headquarters a line-up sheet and a prisoner interview sheet were prepared, and appellant was questioned about the offense and asked about the lighter. He was given tests for the presence of blood on his private parts. Mallory indicated in his testimony that the questions that night were few in number. He denied any part in the crime. He was then put in the cell block, and nothing further happened until morning. At about nine o'clock the next morning a police officer questioned Mallory, and he admitted guilt. This

1. 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

2. This court issued a rule to show cause why the judgment should not be vacated. An answer to the rule was filed by the United States.

questioning lasted only five or ten minutes, according to the officers' testimony. Mallory testified that the officers simply told him the child had been checked at the hospital and he might as well say he did it; that they "would go easy on" him if he said he did it. The officers testified that no promises were made. Both Mallory and the officers testified that he was told he did not have to make a statement unless he wanted to and that the statement would be used either for or against him depending upon what the statement was. The statement was typed, read back to Mallory, and signed by him. During this time the complaining child, her mother, her grandmother, and Mallory's common-law wife were brought in, and the child recited her story of what had happened. Mallory admitted, in the presence of these people, that he had had intercourse with the child. He was arraigned sometime before noon.

Mallory's version of the matter, in his written statement and in his verbal statement before the police, the complainant, her mother, et al., was that the child had proffered intercourse for a small sum of money and that if he had not been drinking he probably would not have done it. At the trial Mallory denied any and all relations whatever with the child; he said he had been drinking and fell asleep. The written statement was introduced at the trial as an exhibit, and the mother, the grandmother, and the officers testified to the oral statements.

We think the confessions were admissible. There is no evidence of prolonged or intensive questioning. Mallory agrees he was "pretty high" on wine when he was arrested and that the questioning that night was cursory. He agrees that the next morning the officers simply told him the child had been checked at a hospital and he might as well admit the act, and that he at once admitted it. He agrees that he made the recitation to the group of women. There seems to us to have been no unnecessary delay in arraignment. The arrest was made somewhere around eight o'clock in the evening on a holiday. The arrested man was drunk, or nearly so. He was arrested on a small child's story, and even though the hour was late the officers checked her story by medical examination. Anyone familiar with hospital procedure knows these things take time.

The only way we see to find unnecessary delay in this case would be to hold (1) that the half-drunken man should have been forthwith arraigned, even though he could not have pleaded intelligently, or (2) that the child's story should not have been checked, or (3) that Mallory must have been arraigned at midnight. Even then, such a holding would have to be made in the face of the facts (a) that no prolonged questioning took place at any time and (b) that Mallory was warned before he signed a statement. We think neither the decision of the Supreme Court in the Mallory case, supra, nor any authority requires or justifies a finding of error in this matter. The motion to remand is denied and the order to show cause dissolved.

BAZELON, Circuit Judge (dissenting).

A police officer arrested appellant at 8:00 p. m., on November 22, 1956, and, after questioning him at the scene, sent him by scout car to police headquarters to await further investigation. After some time the officer himself went to headquarters, had appellant brought from the cell block to the office of the Sex Squad and questioned him further. Thereafter, appellant was given certain chemical tests for traces of blood and was taken back to the cell block. Throughout the interrogation by the arresting officer, appellant denied guilt. No effort was made to bring appellant before a committing magistrate as Rule 5, Fed.R.Crim.P., 18 U.S.C.A., commands shall be done "without unnecessary delay."

The next morning at about 9:00 a. m., appellant was questioned again by two other officers for a period which they say "wasn't much over five, ten minutes" and he confessed to them that he had had intercourse with the child. They asked

him if he cared to make a statement in writing, telling him that he was not required to do so and that, if he did, it could be used in evidence. This statement of his rights was *not* given to him before he orally confessed and at no time was he told that he had a right to have a lawyer and appear before a magistrate before making a statement. Appellant agreed to make a statement in writing. At 9:13 a. m., a police typist began to type his confession and at 9:32 a. m. it was finished and signed. After the statement had been signed, appellant was confronted with the child and her mother and, in their presence, repeated his confession. Then, some time before noon, the police took him to the Municipal Court where he waived preliminary hearing and was committed to jail.

Appellant admitted at the trial that he had made the confession, but testified that the statements contained in it were untrue. He said he confessed because the officers told him to and because they said they would "go easy" on him if he did. He said further that he had been brought up in the South to do what white people tell him to do. The officers who obtained the confession, on the other hand, testified that no threats or promises of any kind had been made to appellant.

If the issue were whether the confession was voluntary, clearly the jury could have chosen to believe the police officers' testimony rather than appellant's. Indeed it would usually (or nearly always) be unrealistic to assume that a jury would take the word of an accused felon over the assurances of officers of the law when there is a conflict of testimony as to what transpired behind the closed doors of the police station. Short of exhibiting welts and bruises, the accused has no way of proving that he confessed involuntarily. Yet experience teaches that police testimony that they used no improper inducements is not always reliable. See 3 Wigmore, Evidence § 851(a) (3d ed. 1957 Supp.) Judicial investigation of the question of voluntariness of a confession is one of the most difficult and perhaps the most fruitless of processes. It is this "elusive" inquiry into the constitutional question of voluntariness of a confession that Rule 5 was designed to avoid.[1] The rule requires the arresting officer to "take the arrested person without unnecessary delay[2] before the nearest available * * * officer empowered to commit persons charged with offenses against the laws of the United States." The committing officer is required to inform the arrested person "of the complaint against him, of his right to retain counsel and of his right to have a preliminary examination. He shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him." After being thus advised of his rights and being given "reasonable time and opportunity to consult counsel," the defendant may either waive preliminary hearing or put the prosecution to its proof that there is probable cause to hold him. If he waives preliminary hearing or if probable cause is proved, the committing magistrate holds him to answer in the district court, either committing him to jail or releasing him on bail. If no probable cause appears, the magistrate discharges the defendant from custody. Obviously, if the police comply with Rule 5 instead of illegally holding an arrested person at po-

1. United States v. Mitchell, 1944, 322 U.S. 65, 68, 64 S.Ct. 896, 897, 88 L.Ed. 1140. The Court noted "the important relation between illegal incommunicado detention and 'third-degree' practices" and stated that, in formulating the McNabb rule for federal prosecutions, it was "not confined to the constitutional question of ascertaining when a confession comes of a free choice and when it is extorted by force, however subtly applied."

2. D.C.Code, § 4–140 requires that when a police officer makes an arrest without a warrant, as in this case, he "shall *immediately, and without delay*, upon such arrest, convey in person such offender before the proper court, that he may be dealt with according to law." Emphasis supplied.

lice headquarters for fourteen hours or so, no question will arise as to the voluntariness of any confession made during a period of detention.

That the police violated Rule 5 in the instant case is beyond question. They did not arraign appellant "without unnecessary delay" when they arrested him at 8:00 p. m. The next morning they delayed further. They interrogated him both on the evening of the arrest and the next morning. Not until some time after 9:00 a. m. did he confess. "Not until he had confessed, when any judicial caution had lost its purpose, did the police arraign him." Mallory v. United States, 1957, 354 U.S. 449, 455, 77 S. Ct. 1356, 1360, 1 L.Ed.2d 1479.

Asked why they had not undertaken to arraign appellant at 9:00 a. m. before interrogating him, the two police officers gave varying explanations. One said that there would have been no committing magistrate available at that time, but admitted that the United States Commissioner can "at times" be reached on short notice.[3] The other officer's answer was:

"Before I had an opportunity— before I gave the man an opportunity to tell me whether or not he was guilty or innocent? * * * That is not my procedure, Sir."

At the oral argument, the Assistant United States Attorney stated that the Government did not rely upon unavailability of a magistrate as a reason for delaying arraignment,[4] thus disposing of the first officer's excuse. As for the second officer's excuse, even if it were true that arraignment may lawfully be delayed long enough to give the suspect an opportunity to deny guilt, there would be no warrant for the morning delay. Appellant had already been questioned twice the night before and had denied guilt on both occasions. And any suggestion that arraignment may be delayed long enough to give the police an opportunity to explode the accused's claim of innocence is

unsupportable. The Supreme Court said in Mallory, 354 U.S. at pages 455–456, 77 S.Ct. at page 1360:

"In every case where the police resort to interrogation of an arrested person and secure a confession, they may well claim, and quite sincerely, that they were merely trying to check on the information given by him. Against such a claim and the evil potentialities of the practice for which it is urged stands Rule 5(a) as a barrier."

In its brief the Government suggests another justification for delaying the arraignment until the questioning was over. It argues that "human experience and public policy" require that the police attempt "to verify and authenticate a story advanced by a little girl against an adult man * * * before they take a man immediately before the magistrate—thereby requiring him to explain away, for the rest of his life, the charge of tampering with an infant." Granting arguendo the validity of this contention, it does not justify the failure of the police to arraign appellant shortly after 9:00 a. m. before they resumed questioning him. They had already verified the child's story to their own satisfaction through medical tests performed during the night. They did nothing further by way of investigation or verification before the arraignment, except to question appellant again. Delay of arraignment for that purpose is clearly forbidden.

In its oral argument the Government suggested still another justification for the delay of arraignment; that appellant was under the influence of alcohol at the time of the arrest so that it was fairer to him to let him sleep it off before taking him before a magistrate. If it is true that appellant was too drunk to be arraigned the night of his arrest, he was also too drunk to be questioned. But the police questioned him that night. And if it is true that the arraignment was de-

---

3. See, for example, United States v. Hoffa, Crim.No.29457 (D.D.C.).

4. See Akowskey v. United States, 1946, 81 U.S.App.D.C. 353, 354, 158 F.2d 649, 650.

layed merely to let appellant recover his faculties, there was no excuse for further delay the next morning.

In my opinion it was error to receive in evidence both appellant's written confession and the testimony of the various witnesses as to his oral confession. The issues having been fully briefed and argued not only on the motion to remand, but also on the rule to show cause why the judgment should not be vacated, no purpose would be served in remanding the cause to the District Court for reconsideration of the effect of Mallory v. United States, supra. I would therefore reverse the judgment and remand the case for a new trial. Mallory v. United States, supra; Watson v. United States, 1957, 101 U.S.App.D.C. 350, 249 F.2d 106.