Charles S. PORTER, Appellant,

v.

UNITED STATES of America, Appellee.

No. 14305.

United States Court of Appeals District of Columbia Circuit.

Argued May 14, 1958.

Decided June 26, 1958.

Petition for Rehearing In Banc Denied Sept. 19, 1958.

Mr. James R. Scullen, Washington, D. C. (appointed by this Court) for appellant.

Mr. John W. Kern, III, Asst. U. S. Atty., Washington, D. C., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before REED, Associate Justice of the Supreme Court, retired,* and BAZELON and BURGER, Circuit Judges.

REED, Associate Justice, sitting by designation.

A welter of incidents tinged with liquor and sex resulted in a man's death. The appellant was convicted of manslaughter and sentenced to three to ten years imprisonment. The same court-appointed counsel represented the accused at the trial and in this Court. After denial by the trial court of a motion to proceed on appeal *in forma pauperis,* this Court allowed such appeal.

The appellant's sole ground for reversal is admission of a "second confession," so denominated by appellant, though it might more accurately be called a state-

---

* Sitting by designation pursuant to the provisions of Sec. 294(a), Title 28 U.S. Code.

ment of events preceding the death. Objection was duly made on the ground that the statement was taken during detention by police in violation of Rule 5 (a) and (b) of the Federal Rules of Criminal Procedure.[1]

We understand that the rulings and decisions of the Supreme Court on the admissibility in criminal trials of statements or confessions of the defendant after arrest and before commitment proceedings are to be applied with the following considerations in mind.

■ Such cases call for inquiry as to whether Rule 5(a) has been violated. If it has, the admission of such statement, over defendant's objection, and if it is material, is an error that requires reversal.

■ The significant words are "shall take the arrested person without unnecessary delay before the nearest available commissioner" or other properly empowered officer. That phrase, " 'without unnecessary delay,' is a compendious restatement, without substantive change," of the various former statutory requirements for prompt presentation of an arrested prisoner before an authorized magistrate.[2] The phrase appeared in the Preliminary Draft of the Advisory Committee on Rules of Criminal Procedure (1943), p. 11, issued after McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, and was employed in lieu of the words "immediately" and "promptly," referred to in that case, 318 U.S. at page 342, 63 S.Ct. at page 614.

The Preliminary Draft included a subsection (b).[3] This was dropped later. The Advisory Committee and the Supreme Court, at the time of their adoption of the Rules, were familiar with the former commentary, p. 266, of the American Law Institute on its proposed Code of Criminal Procedure (1930), section 39 concerning preliminary examination.[4] That commentary called attention to Scotch practice. The draftsmen of Rule 5 and the Supreme Court did not accept the suggestion of the "simplest, clearest, and apparently the most effective" rule against police interrogation. "In Scotland, 'Interrogations of arrested persons by the police are forbidden * * *' " Preliminary Draft, supra, p. 14. Use of statements, too, received under such circumstances, could have been forbidden. They were not.

■ Instead, the Supreme Court pointed out in the McNabb case, supra, 318 U.S. at page 344, 63 S.Ct. at page 614 that the police must act "with rea-

1. 18 U.S.C.:

"Rule 5. Proceedings before the Commissioner

"(a) Appearance before the Commissioner. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith.

"(b) Statement by the Commissioner. The commissioner shall inform the defendant of the complaint against him, of his right to retain counsel and of his right to have a preliminary examination. He shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him. The commissioner shall allow the defendant reasonable time and opportunity to consult counsel and shall admit the defendant to bail as provided in these rules."

2. Mallory v. United States, 354 U.S. 449, 452, 77 S.Ct. 1356, 1 L.Ed.2d 1479; Notes to the Rules of Criminal Procedure for the District Courts of the United States, Advisory Committee on Rules of Criminal Procedure, March 1945 (GPO), p. 4.

3. "(b) Exclusion of Statement Secured in Violation of Rule. No statement made by a defendant in response to interrogation by an officer or agent of the government shall be admissible in evidence against him if the interrogation occurs while the defendant is held in custody in violation of this rule."

4. Preliminary Draft, supra, p. 14.

sonable promptness"; 318 U.S. on page 346, 63 S.Ct. on page 615 "[t]he mere fact that a confession was made while in the custody of the police does not render it inadmissible." Cf. United States v. Carignan, 342 U.S. 36, 72 S.Ct. 97, 96 L. Ed. 48. In United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140, although the defendant was eventually illegally detained following prompt confession after arrest, the prosecution's introduction of his statement in evidence was approved. Thus the holding was that later "illegal detention did not render inadmissible his prior confessions." [5] Confession or statements to police, after arrest and during illegal detention, not in the presence of a commissioner or other official authorized to hold hearings and advise the prisoner of his rights, are inadmissible. [6]

█ Illegal detention under the Federal Rules occurs when there is "unnecessary delay" in the preliminary hearing preceding the statement. The statement is then inadmissible whether it is voluntary or involuntary in the common law or due process sense. [7] In England, prisoners' statements to officers are admissible although made after arrest, if proper caution as to their rights has been given by the officer. [8] The judge, however, may admit the statement even if taken contrary to the Judges Rules, if he concludes it would be fair to do so. [9] In Canada, a preliminary caution as to his rights is required before statements after arrest are allowed in evidence. [10] Australia applies the English Judges Rules as England does. It was said in R. v. Jeffries, (1947) 47 S.R. (N.S.W.) 284, at pp. 313–314:

"The obligation resting upon police officers is to put all questions fairly and to refrain from anything in the nature of a threat or any attempt to extort an admission. But it is in the interests of the community that all crimes should be fully investigated with the object of bringing malefactors to justice and such investigations must not be unduly hampered. * * * Upon the particular circumstances of each case depends the answer to the question as to the admissibility of such evidence." Cf. 30 Australian L.J. 60.

The statutory direction to "produce a prisoner before a magistrate without unnecessary delay" is not a measure as definitive as the standard yard. It did have a background of interpretation, however, when it appeared in the Rules. [11] "Without unnecessary delay" had been used in New York at least since 1887, Code of Criminal Procedure § 165, and in Illinois since 1874, Smith-Hurd Criminal Code § 660. Disregard of the duty of arraignment, it was held in People v. Mummiani, 258 N.Y. 394, 396, 180 N.E. 94, 95, "does

5. Upshaw v. United States, 335 U.S. 410, 413, 69 S.Ct. 170, 171, 93 L.Ed. 100.

6. Upshaw v. United States, supra, 335 U.S. at page 413, 69 S.Ct. 170; Mallory v. United States, 354 U.S. 449, 453, 77 S.Ct. 1356; cf. Stein v. New York, 346 U.S. 156, 187, 73 S.Ct. 1077, 97 L.Ed. 1522.

7. Cf. McNabb v. United States, supra, 318 U.S. at page 339, 63 S.Ct. 614.

8. Archbold's Criminal Pleadings, Evidence and Practice (33d ed.) 414.

9. Cf. Haydon Wattam, 36 Crim.App.Rep. (1952) 72.

10. Gach v. King, 79 Canadian Crim.Cases 221, 225.

11. See Notes to the Rules of Criminal Procedure, supra, p. 4; Second Preliminary Draft of the Advisory Committee on Rules of Criminal Procedure, February 1944 (GPO); Janus v. United States, 9 Cir., 38 F.2d 431, 437, had held the following instruction correct in a false imprisonment suit: " * * * in such determination, you should consider the accessibility of a Commissioner; whether or not and when he was available for the purpose, his distance from the place, the safety with which the person arrested might be taken before him, and all other facts and circumstances then existing."

not avail, however, without more to invalidate an intermediate confession." People v. Alex, 265 N.Y. 192, 194, 192 N. E. 289, 94 A.L.R. 1033. Of course, evidence of illegal detention is admissible on the question of coercion. People v. Elmore, 277 N.Y. 397, 14 N.E.2d 451, 124 A.L.R. 465. Thus they differ from the federal rule.

Both New York and Illinois recognize that the rule for production "without unnecessary delay" is during the ordinary professional hours of commissioners and judges.

"Furthermore, his detention was not unlawful, for section 7 of division 6 of the Criminal Code, Ill.Rev. Stat.1947, chap. 38, par. 660, does not require that courts of committing magistrates shall be open on Saturday night, Sunday, and Sunday night in order to enable peace officers to bring an arrested person before one for arraignment when, during all that time, the crime committed has not been fully solved in respect to the identity of other participants, and the arrested person's connection therewith is still under investigation." [12]

This is the view of the Supreme Court, Mallory v. United States, 354 U.S. at page 453, 77 S.Ct. at page 1359. Police detention was willful disobedience of law "when a committing magistrate was readily accessible."

We turn now to the application to this case of these rulings. The people and courts of this Nation are one in their desire to support police efforts to detect and punish crime, and equally concerned with assuring a defendant of a fair and just trial. The value in enforcement of careful interrogation of suspects is recognized and encouraged until such time as a suspect is taken into custody. The danger of alarm to accomplices or flight by suspects before arrest complicates such preliminary investigations. On arrest the prisoner must be taken before any reasonably accessible magistrate without unnecessary delay. But until there is such an opportunity to reach such an official, the Supreme Court has not held reasonable questioning without more of prisoners must cease. Each case depends upon its own facts as to what is or is not unnecessary delay.

The significant testimony concerning the investigation and trial of this homicide is this. After a fist fight with decedent, around 1:30 P.M., Tuesday, July 31, 1956, in appellant's apartment, over decedent's association with appellant's wife, both decedent and appellant being "half drunk," appellant forcibly ejected decedent from the room, down a short flight of cement steps, with a final shove through the door onto the sidewalk. There decedent fell upon the tree strip between the walk and the highway. An abrasion was on his skull near the ear when decedent was picked up by the police, on a call from the apartment. He was locked up at No. 11 Precinct at 2:55 P.M., Tuesday, as intoxicated.

It developed that the head injury was more serious than the police realized at first. He was taken by them to D. C. General Hospital and admitted at 7:25 P.M. An emergency operation on the brain followed and he died Wednesday morning at 9:55 o'clock.

Meanwhile, word having reached the precinct of the seriousness of the injury, appellant was arrested Tuesday night about 10:30 at his mother's home by Detective Reinhardt, charged with assault with a dangerous weapon, to-wit a trained fist, and made a statement to the same officer, when alone with him, in the Detective Office. Transcription was finished at 11:15 P.M. that day. It appears

---

12. People v. Kelly, 404 Ill. 281, 288–289, 89 N.E.2d 27, 31. See City of Buffalo v. Neubeck, 209 App.Div. 386, 204 N.Y.S. 737, 739. Cf. People v. Lovello, 1 N.Y. 2d 436, 154 N.Y.S.2d 8, 136 N.E.2d 483. See Uniform Arrest Act, 28 Va.L.Rev. 315, 339. Adoption of wording of a statute from another jurisdiction carries with it generally previous judicial decisions. Cf. Yates v. United States, 354 U.S. 298, 309, 77 S.Ct. 1064, 1 L.Ed.2d 1356.

below.[13] Next morning, Wednesday, about 9 A.M., Detective Wallace of the Homicide Squad on hospital assignment in a routine check, having heard of the nature of the injury but not the death, was told by the prisoner verbally the same facts as were in his earlier statement.[14]

A little later that morning the prisoner was taken to the United States Branch of the Police Court for his appearance under Rule 5, Fed.Rules Crim. Proc., on the charge of assault. While awaiting appearance, between 10 and 10:30 A.M., it was learned for the first time of the death of the injured man at 9:55 A.M. Judge Howard then told the officer "that the case should be taken to the Homicide Squad." This was done by the United States Marshal. We find nothing in the record to support the statement of appellant's brief that "he was standing before the arraigning judge" when the Court was advised of the death of the injured man. He may have been in the room or a cell awaiting his turn. His exact location seems unimportant. No appearance was made before the magistrate at that time and nothing appears in the record that the prisoner was advised of his right to counsel. No witness queried by the defense had heard such advice given.

Neither does the record show specifically the reason for the judge's direction to return the prisoner to the precinct. It may be normal practice to defer appearance on minor charges until an arrest on homicide or other more serious charges that may have developed has been made. At any rate the prisoner was returned to No. 1 precinct "not later" than eleven o'clock. At 12:45 P.M. the taking of his statement on the homicide started in the offices of the Homicide Squad before Reinhardt, a precinct detective, two detective sergeants, and a civilian clerk. The questioner, Sergeant Clarke, first read:

"Charles Stanislas Porter, you are being held on account of the death of Bertram Bowers, white, who was pronounced dead August 1, 1956, this death being caused by his being beaten while in premises 1107 Trenton Place, Southeast, Apartment 2–C, about 2:45 p. m., July 31, 1956.

"I now ask you if you want to make a complete statement telling

13. "Metropolitan Police Department, Washington, D. C., date 7–31–56, 11:15 p. m., Detective Office, 11th Precinct, Re: Charles Stanislas Porter, you are requested to make a statement of the facts in this case to the best of your knowledge.

"However, you are advised that you are not compelled to make a statement or not promised anything for making one and do so at your own free will. If necessary, the statement you make will be used against you in court.

"Having been so advised, are you willing to make a statement?
* * * "Yes."
 *  *  *  *  *

"Statement: About 2:45 p. m., Tuesday, July 31, 1956, I went to my apartment located at 1107 Trenton Place Southeast, apartment 2–C. The door was unlocked. I entered and saw my wife, 48 years, in company with an unknown white man whom I learned later to be Bertram Bowers.

"I said, 'So this is the man you have been out with all night.'

"My wife started smacking me. I smacked her and hit Bowers. I had been drinking and don't remember where I hit him. I hit him about three times, using my fist.

"I caught hold of Bowers by the belt and dragged him from my apartment to the front sidewalk and left him lying there.

"I went back and asked my stepdaughter for my clothes.

"I then left and went to 3026 Riggs Road, Southeast, Apartment 3. This is my mother's home. This is where I was later arrested."

Signed "Charles Porter." Witness "Frank Reinhardt." Transcript of Record, pp. 38–40.

14. "Q. What was said at that time?
"A. I asked him why he had been arrested, only he had had a fit, this fellow Bowers, that he had come home and found him with his wife and he grabbed hold of him and hit him with his fist and knocked him down and dragged him down the steps and threw him out." Transcript of Record, 47.

what knowledge you have of this beating so it can be taken down in typewritten form.

"Before making such statement I advise you that your statement must be made freely and voluntarily and also your statement will be used against you in court at your trial if it becomes necessary.

"After hearing what I have just said to you, do you want to make a complete statement?

"Answer by Charles Stanislas Porter: Yes, sir." Transcript of Record, 61–62.

Thereafter appellant amplified the same facts set out in the first statement quoted above. The only pertinent new information or incident in the second statement of which appellant does or could complain is this single question and answer:

"Question: Have you ever had any experience as a boxer?

"Answer: When I was about 14 years old I used to train with the boys club but I never had an actual fight in the ring." Transcript of Record, 68.

Nothing further appears as to any pugilistic experience. The statement was finished at 1:44 P.M. The appellant was taken before the committing magistrate that day at 3:30 P.M. Nothing appears in the record as to whether an appearance could have been arranged during the interim.

■ *First.* Under these circumstances, was the admission in evidence of either the first or the second statement or confession or admission an error, requiring reversal? Or, stated differently, was the production of the prisoner for preliminary appearance "without unnecessary delay?"

This Court has recently decided two cases that bear upon the problems in this case—Metoyer v. United States, 1957, 102 U.S.App.D.C. 62, 250 F.2d 30, and Trilling v. United States, —— U.S.App.

D.C. ——, 260 F.2d 677. The Metoyer case involved an arrest at noon and a detention in Maryland of a suspect in a District of Columbia crime for an hour before the arrival of the District police. Thereupon he promptly admitted certain facts to these police. It was reduced to writing before the District warrant arrived, after which, at 3:30 P.M., he was first taken before a judge, advised of his rights, and extradited. This Court held the confession admissible over a dissent on the ground there was "no excuse" for the delay under the Mallory case. This Court said:

"If police are compelled to arraign all potential suspects before questioning any of them we shall have used the artificial niceties and superficial technicalities concerning our liberties to reduce genuine and important rights to absurdity—and dangerous absurdity at that. Every citizen has a right to insist that the police make some pertinent and definitive inquiry *before* he may be arraigned on a criminal charge, which even if it is later abandoned inflicts on him a serious stigma." 250 F.2d 33.

In the Trilling case a prisoner arrested at 5:30 A.M. was questioned by several officers for short periods until he confessed before 8 A.M. His appearance was later but the confession was admitted.

A few words will suffice on the question of the admission of the first statement. See note 13, supra. No objection was made by defense counsel. The statement was given almost immediately. It was without pressure of any kind except the mere fact of detention. To say it was inadmissible would be to say no statement to police is admissible after arrest—a step that the Supreme Court has not taken in the Rules and has declined to adopt in the McNabb, Mitchell and Carignan cases.[15] The arrest was

15. Able members of the judiciary have sought to forge an iron rule that no statements made to police after arrest and before appearance before a magistrate or commissioner may be introduced in evidence. See dissents in Stro-

past the ordinary hours for appearances. See note 12, supra. There is no rule of law in federal courts that bars the admissibility of extra-judicial statements of prisoners to the police after arrest and before the time has expired of permissible detention between arrest and appearance before a magistrate.

While we have no doubt that the second statement was made within the period of necessary delay, in advance of the required appearance before a magistrate, a different conclusion is reasonably possible. The result might well depend upon a court's weighing of the interests of society in law enforcement through the disclosure of the actual facts surrounding an alleged criminal act and the protection of a prisoner from being induced, even though without unconstitutional coercion, to make a clean breast of his participation in the action charged. There is nothing in the case to call for the belaboring of the police for lazy methods of investigation by compelling confession instead of searching in the haystack for the sharp needle of fact. They were prompt to respond to duty and when taking the statements, cautioned the prisoner in almost the words of the Judges' Rules of England.[16] In our system of justice, as in England, it has not been thought necessary for the police to inform everyone, upon arrest, "Remember, you are entitled to the advice of counsel before you answer any question."[17] The time that an accused is entitled to counsel for the protection of his rights on criminal charges is from arraignment, that is plea after indictment, to the conclusion of his trial. Cf. Hawk v. Olson, 326 U.S. 271, 278, 66 S.Ct. 116, 90 L.Ed. 61. Rule 5(a), Fed.Rules Crim.Proc.,

requires that he be advised at his appearance of his right to retain counsel.

As for the prisoner's appearance before the magistrate after the charge of manslaughter, we conclude that also was without unnecessary delay. Surely a man arrested Tuesday night at eleven o'clock for assault need not be taken before a magistrate until the next morning. No one will assert, without specific proof, that the personnel of our police departments are so regardless of court rulings on interrogation as to require every prisoner to be taken before a magistrate at midnight for every kind of offense or before the opening of the courts in the morning.

Promptly at usual court hours, though the seriousness of decedent's injuries was already known to the police, but not his death, the prisoner was presented before the court. When the judge heard of the death, he directed the return of the prisoner by the United States Marshal to the City Homicide Squad. On his return, with the probability of a charge of some degree of homicide, what more natural than that the police would take a statement before selecting a charge of murder or manslaughter. It is to be noted that the statement was made after a question as to whether the prisoner wanted to do so. See 103 U.S.App.D.C. 390, 258 F.2d 690, supra. We do not think there was unnecessary delay.

■ *Second.* But let us assume that the second appearance before the magistrate was unnecessarily delayed and therefore inadmissible under rulings of the Supreme Court. A court would then have to decide whether the error in admitting the statement was material to

ble v. California, 343 U.S. 181, 203, 72 S.Ct. 599, 96 L.Ed. 872, and United States v. Mitchell, 322 U.S. 65, 71, 64 S. Ct. 896, 88 L.Ed. 1140.

16. Compare the caution, 103 U.S.App.D.C. 390, 258 F.2d 690, supra, with No. 5 of the Judges' Rules, Archbold's Criminal Pleading, Evidence & Practice (33d ed.) § 682: "5. The caution to be administered to a prisoner, when he is formally charged, should therefore be in the following words: 'Do you wish to say anything in answer to the charge? You are not obliged to say anything unless you wish to do so, but whatever you say will be taken down in writing and may be given in evidence.'"

17. Cf. In re Groban, 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376, where denial of counsel in an investigation of a fire was held constitutionally permissible by a state.

the result of the trial.[18] The reason the series of cases from McNabb to Mallory set aside the verdicts on account of the admissions of the confessions is that facts were obtained by the confessions that may have aided the jury in reaching their result. In the Mallory case, the Court succinctly summarized the reason for exclusion:

> "In order adequately to enforce the congressional requirement of prompt arraignment, it was deemed necessary to render inadmissible incriminating statements elicited from defendants during a period of unlawful detention." 354 U.S. at page 453, 77 S.Ct. at page 1359.

In the present case there were no "incriminating statements" in the second admission. The bar against admissions after prohibited interrogation is not to penalize the police or the public for the error but to protect the rights of the accused.

In this case nothing appeared that had not already been told by timely statements. Appellant seeks to draw from boxing experience, at fourteen years of age in a "boys club," a conclusion of appellant's training in slugger tactics. See 103 U.S.App.D.C. 391, 258 F.2d 691, supra. It is inconceivable to us that such testimony could harmfully affect appellant's rights.

We find nothing to justify a reversal of this judgment.

BAZELON, Circuit Judge (dissenting).

The error alleged on this appeal is the admission in evidence at appellant's trial, over his objection, of a written confession taken from him by the police on the afternoon of August 1, 1956, the day after his arrest.

My views on the prompt arraignment question have been expressed in a number of opinions, most recently in Trilling v. United States, —— U.S.App.D.C. ——,

260 F.2d 677; and Mallory v. United States, —— U.S.App.D.C. ——, 259 F.2d 796. Basically, it suffices to say here, Rule 5 is the mechanism for effectuating the individual's constitutional rights to be free from restraint except upon probable cause, to be bailed from confinement in proper cases, and not to be compelled to incriminate himself. Whether there is probable cause to detain an arrested person requires a judicial determination. Even if there is such cause he is entitled, within recognized limitations, to be free on bail pending trial. And he must be informed of his right to counsel and of his right to refuse to make any statement lest he incriminate himself. Without such protection our citizens would be subject to police control rather than due process of law. There would be a police state. The essence of Rule 5 is that it removes the arrested individual from police control to judicial control "without unnecessary delay."

While the phrase "without unnecessary delay" may connote something less than immediacy, it "allows arresting officers little more leeway than the interval between arrest and the ordinary administrative steps required to bring a suspect before the nearest available magistrate." Mallory v. United States, 1957, 354 U.S. 449, 453, 77 S.Ct. 1356. That the police in the present case thought the "ordinary administrative steps" had been completed is plain from the fact that the prisoner had been taken to court for the Rule 5 commitment proceedings at 10:00 A.M., some twelve hours after his arrest.

The complaining officer was in court ready to make the assault charge. When word was received that the victim of the assault had died, appellant could still have been arraigned on the assault charge, or the officer could have made a homicide charge, or another officer could have stepped across the street from police headquarters to make the homicide charge. In any event, there were no fur-

---

18. Fed.Rules Crim.Proc., Rule 52:
  "(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

ther "administrative steps" to be taken which necessitated delay of the commitment proceedings.

The Government said at the argument that appellant could not have been charged with homicide when he was in the Municipal Court because the report of the death was only unconfirmed hearsay at that time. But if the police had reason to doubt the accuracy of the information, they could easily have confirmed it and then made a homicide charge. If they had no confidence in the homicide charge, they should have proceeded on the assault charge. An unconfirmed rumor is no basis for a homicide charge, but neither is it a valid reason for depriving a prisoner of his right to speedy arraignment on a pending assault charge.

The real purpose in delaying the arraignment is disclosed in the Government's alternative contention that it was proper to bring appellant back to police headquarters, without arraigning him, for the purpose of putting in writing the oral statements which appellant had made shortly after 9:00 A.M. under questioning by Detective Wallace of the Homicide Squad.[1] This, of course, is a callous admission that the arraignment was postponed and appellant "taken to police headquarters in order to carry out a process of inquiry that lends itself * * * to eliciting damaging statements to support the arrest and ultimately his guilt." Mallory v. United States, 354 U.S. at page 454, 77 S.Ct. at page 1359. Since this is exactly what the law forbids, the ensuing confession was inadmissible in evidence.

I cannot agree with the majority's view that receiving the confession in evidence was harmless error, if error. As the majority recognizes, it was through that confession that the Government proved appellant's boxing training, such

as it was. But the majority finds it "inconceivable * * * that such testimony could harmfully affect appellant's rights." Since the Government referred to this evidence in its opening argument to the jury, it obviously did not consider it inconceivable that it would influence the jury. Nor do I. And, if it is conceivable that the evidence may have tipped the scales in favor of conviction, we usurp the jury's function by assuming that it did not. Krulewitch v. United States, 1949, 336 U.S. 440, 445, 69 S. Ct. 716, 93 L.Ed. 790.

The confession may have been harmful to appellant in another respect as well. The Government, anticipating that the jury might be disinclined to condemn a man for throwing his wife's paramour out of his home, made a considerable point of the fact that appellant and his wife had been separated at the time of the incident. This fact was supplied by the inadmissible confession.

The other confessions discussed in the majority opinion—a written one taken from appellant the night of his arrest and an oral one shortly after 9:00 o'clock the next morning—are not before us. Both were received in evidence without objection and neither was attacked on appeal. Yet the majority considers them and concludes that they were admissible under Mallory v. United States, supra. I consider that conclusion clearly erroneous.

I hold to the view that confessions obtained through police interrogation of an arrested person before he has been arraigned under Rule 5 are inadmissible. My reasons for that view are set forth at length in Trilling v. United States, supra. I shall not repeat them here. I shall only comment upon two propositions asserted by the majority.

The majority asserts that to hold these confessions inadmissible "would be to

1. The interrogation at the Homicide Squad office was conducted by Sergeant Clarke, not a single question being asked by Detective Wallace. If the purpose were to record what appellant had earlier told Wallace, it would seem that the latter would have participated in the interrogation. Detective Wallace testified that appellant was brought back to headquarters "to take the statement," referring to the written confession which is here at issue.

say no statement to police is admissible after arrest—a step that the Supreme Court has not taken in the Rules and has declined to adopt in the McNabb, Mitchell and Carignan cases." This assertion completely misses the point that is involved here. To be sure the Supreme Court has not said that *no* statement made to the police after arrest is admissible. The type of statement it has held admissible, however, is that which is "promptly and spontaneously" made. Upshaw v. United States, 1949, 335 U.S. 410, 413, 69 S.Ct. 170, 171, 93 L.Ed. 100. A person who is arrested is, of course, free to unbosom himself of his guilt. If he does so, his statement may be used against him.

That is the principle embodied in the British practice to which the majority refers. To make certain that the prisoner's statement is a voluntary one, the arresting officer cautions him immediately upon the arrest that he is free to remain silent and that whatever he says may be used against him. Then the officer asks the prisoner whether he desires to make any statement. If the prisoner wishes to make a statement, he does so; *but he is not subjected to an interrogation.*

Only by disregarding the facts could we conclude that the practice by which these two confessions were obtained bears any resemblance to the British practice. When appellant was arrested on the night of the assault, he was questioned by Detective Reinhardt. After the interrogation, Detective Reinhardt inserted in a typewriter a prepared police form reading as follows:

Date . . . . . . . . . . . . .

Re: . . . . . . . . . . . . . . . . . . . . . . .

You are requested to make a statement of the facts in this case to the best of your knowledge. However you are advised that you are not compelled to make a statement, are not promised anything for making one, and do so at your own free will. If necessary, the statement you make will be used against you in Court. Having been so advised, are you willing to make a statement?

Reply by . . . . . . .. . . . . . . . . . . . .

Statement:

He typed in the date, appellant's name, and the word "Yes" in the blank for "Reply by." And under "Statement," he typed in a condensation of his understanding of what appellant had orally admitted. Appellant then read the statement and signed it. Merely giving the prisoner an opportunity to read the boiler plate of a prepared form is no substitute for giving him a meaningful cautionary statement. Moreover, even if appellant's eighth-grade education were enough to permit him to understand from the form that he was not required to confess, that understanding would have come too late. He had already confessed orally in the course of the interrogation. No cautionary statement had been given him before that confession.

The majority also asserts that appellant's arrest occurred "past the ordinary hours for appearances" and concludes that this circumstance gave the police a license not only to postpone his arraignment until the opening of court the next day but also to question him in the interval. There are no "ordinary hours for appearances," for, as we said in Akowskey v. United States, 1946, 81 U.S.App. D.C. 353, 354, 158 F.2d 649, 650, "both by law and practice" a prisoner may be brought before a committing magistrate "at any hour." The United States Commissioner is available for night time arraignments when the Government sees fit to have a prisoner arraigned without delay.[2] Recently a rotation system was established among the Sixteen Municipal Court judges whereby at least one of them is available for arraignment of arrested persons at any hour of the day or night.[3] Even the United States Attor-

---

2. See United States v. Hoffa, Crim. No. 294–57 (D.D.C.), and my opinion in Trilling v. United States, supra.

3. Washington Post-Times Herald, April 4, 1958, p. A–1.

ney has abandoned the argument that a late-hour arrest justifies postponing arraignment and receiving in evidence a confession obtained through questioning the prisoner in the interval.[4] Mallory v. United States, —— U.S.App.D.C. ——, 259 F.2d 796; see my opinion in Trilling v. United States, supra. It is regrettable that this court should disinter an argument which has been decently laid to rest by the prosecutor, which has no basis in fact, and which disregards the fundamental rights of arrested persons.

4. What justified the postponement of appellant's arraignment, according to the Government, was not the late hour of his arrest, but rather the fact that he was too drunk to be taken before a magistrate. I agree that it may be fair to postpone for a short time an arrested person's Rule 5 proceeding if he is mentally unfit, by reason of drunkenness or otherwise, to avail himself of the rights afforded him therein. But the very same considerations of fairness which call for postponing his arraignment forbid subjecting such a prisoner to an interrogation during the period of postponement. See my opinion in Mallory v. United States, supra.