Calvin L. RICKS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17771.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 28, 1963.

Decided June 9, 1964.

Mr. Robert M. Scott, Washington, D. C., (appointed by this court) for appellant.

Mr. Gerald A. Messerman, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Joseph A. Lowther, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and BASTIAN and McGOWAN, Circuit Judges.

BAZELON, Chief Judge.

A jury found appellant not guilty by reason of insanity on three counts of rape and one count of assault to commit rape. It found him guilty on four counts of robbery, five counts of assault with a dangerous weapon, and nine counts of housebreaking. The court committed appellant to St. Elizabeths Hospital on the verdicts of not guilty by reason of insanity and imposed sentences on the guilty verdicts to begin from date of imposition.[1] We are urged to reverse the guilty verdicts chiefly on the ground that the trial court erred in admitting several damaging oral and written statements which the police elicited from appellant in violation of Rule 5(a), FED.R. CRIM.P., and of his right to counsel.

These statements were obtained in the following circumstances. After Mrs. M., a rape victim, had identified appellant's

1. The court imposed sentences of five to fifteen years on each of four of the housebreaking verdicts, to run consecutively, and sentences on all the other guilty verdicts, to run concurrently with the sentences for housebreaking.

Appellant has not raised, and we therefore do not consider, the question whether the verdicts of guilty and not guilty by reason of insanity on counts arising out of a single occurrence are inconsistent.

photograph, Detective Wallace arrested appellant, without a warrant, at his home at approximately 3:50 p. m. on a Sunday, and took him immediately to the Ninth Precinct Police Station where he was charged on the arrest book with rape and housebreaking. Appellant denied the charges. At 4:20 or 4:25, Mrs. M. positively identified him in a line-up as her assailant, and Detective Wallace, the arresting officer, was "perfectly satisfied" with her identification. But appellant continued to deny the charges. Sex Squad Detectives Wolfgang and Kline arrived at the precinct station at about 4:30 and were informed of Mrs. M.'s positive identification. Within five or ten minutes Detective Wolfgang began interrogating Ricks, and Detective Kline began efforts to reach an Assistant United States Attorney by telephone for advice as to a "night arraignment." Kline reached an Assistant at 5:10 p. m., and upon being told that "it would be perfectly all right to hold the man over until Monday morning," Kline made no effort to locate a committing magistrate.

At 5:30 Detective Wolfgang brought Mrs. M. into Ricks' presence, where she related her version of the alleged crime. During this confrontation, which lasted until 6:00 p. m., Ricks did not depart from his claim of innocence. But after Mrs. M. stepped out of the room, Ricks admitted raping her, and he apologized to her when she returned.

At 6:05 p. m. Ricks was placed in a second line-up before a Miss S., who had been raped over seven months earlier, and before a son-in-law of Mrs. L., a victim of a more recent assault with a razor blade. Neither identified Ricks.

As Ricks left this line-up, Wallace told him that his fingerprints were found on the razor blade, and said, "Calvin, you might as well tell the truth." Ricks said nothing, but a few moments later he passed Mrs. L.'s son-in-law in the corridor and said, "You're the man that chased me out of the house when the woman on the second floor screamed." At 7:00 p. m. Ricks was placed in a third line-up before a Miss A., who was unable to identify him as her attacker seven months previously. When the police ended their questioning of Ricks at 7:00 p. m. on Sunday, he had denied attacking Misses A., S. and C., and admitted attacking Mrs. M. and Mrs. L.

Ricks, who had no counsel, was taken before a Commissioner the next day (Monday) at 10:20 a. m. The Commissioner stated the charges and advised Ricks of his right not to make any statement and his right to retain counsel and to have a preliminary hearing. The Commissioner stated that Ricks could choose either (1) to have a hearing, (2) to waive the hearing, or (3) to postpone the hearing "for the purpose of contacting counsel or contacting any member of his family relative to securing counsel for him." [2] When Ricks chose the latter,

---

2. The Commissioner did not offer to appoint counsel for Ricks if he was indigent. He was apparently prepared to hold the hearing without counsel if Ricks chose this alternative; he would also have allowed Ricks to waive hearing without a lawyer's advice.

Twenty-two years ago, in holding that the privilege against self-incrimination applied at preliminary hearings, we said that the hearing was a "judicial proceeding" and not a "prosecutor's inquisition," that its purpose is "to decide between the informer or prosecutor and the accused on the preliminary question of his temporary restraint. * * * In subject matter and function, the hearing is judicial. It should be so in essential procedure." We stated:

"For the same reasons the accused is entitled to have counsel at the hearing. If authority for this is needed, it is supplied by the decisions which sustain the right when the accused demands such aid at this stage. [Citing cases.] * * * As with the right of counsel, waiver of the privilege must be informed and intelligent. There can be no waiver if the defendants do not know their rights."

Wood v. United States, 75 U.S.App.D.C. 274, 279–280, 286, 128 F.2d 265, 270–271, 277, 141 A.L.R. 1318 (1942).

In 1946, however, the Advisory Committee on the Federal Rules of Criminal Procedure stated in a note to Rule 44, that the Rule's requirement for the assignment of counsel at every stage of the proceed-

the hearing was continued for three days and he was held without bond. Immediately after Ricks' appearance before the Commissioner, Detective Wolfgang obtained Ricks' permission for an interview in the Commissioner's cellblock. Ricks agreed to Wolfgang's suggestion that Mrs. M. join them, but when Mrs. M. entered, Ricks asked her to leave. Then in the presence of only Detective Wolfgang, Ricks admitted several crimes, including those charged here, orally and by writing on cards and signing his name opposite various items on a list of open crimes. He stated that he wanted to apologize to his victims. Wolfgang left about 11:55 a. m.

At 2:23 that afternoon Ricks was taken before a judge of the United States District Court for a hearing on the United States Attorney's request to release Ricks to the police "to assist in the solution of various * * * crimes." Ricks

agreed to go with the police, although the judge told him that he did not have to and that anything which transpired could be used against him. The judge did not tell Ricks that he had a right to counsel, nor did he offer to appoint counsel. Ricks was released to the police for four hours during which he repeated his earlier admissions.

At trial all of Ricks' statements were admitted into evidence over his objection.

In Mallory v. United States,[3] the Supreme Court provided a clear interpretation of Rule 5(a) of the Federal Rules of Criminal Procedure:

"The scheme for initiating a federal prosecution is plainly defined. The police may not arrest upon mere suspicion but only on 'probable cause.' The next step in the proceeding is to arraign the arrested person before a judicial officer as

ings "does not include preliminary proceedings before a committing magistrate." And in 1949 this court, relying upon this note, observed in a habeas corpus proceeding that "[t]here is no constitutional requirement that the accused be represented by counsel on arraignment where he pleads not guilty * * * [or] at the preliminary hearing where he pleads not guilty." Council v. Clemmer, 85 U.S. App.D.C. 74, 177 F.2d 22, cert. denied, 338 U.S. 880, 70 S.Ct. 150, 94 L.Ed. 540 (1949). Quoting a Ninth Circuit case which had asserted that "the preliminary hearing is an ex parte proceeding," the Council opinion concluded that no prejudice could occur if a "not guilty" plea was entered. But Wood had pointed out that the temporary loss of liberty authorized by the magistrate's "judicial proceeding" was itself prejudicial. And the inconsistencies with Wood were unnecessary to Council's holding that a conviction is not subject to collateral attack merely because counsel was absent during pretrial proceedings, unless that absence prejudiced the accused at trial. Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), and White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), cast doubt on the Council dicta that a lawyer is necessary only if a defendant pleads guilty.

If the advisory note to Rule 44, taken with Rule 5(b), is construed to establish a right only "to retain counsel" for the

preliminary hearing, then the question arises whether there is an "invidious discrimination" between defendants who can afford to retain counsel and those who cannot. See Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L. Ed.2d 892 (1963); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962); Trilling v. United States, 104 U.S.App.D.C. 159, 177, 260 F.2d 677, 695 n. 24 (1958) (opinion of Bazelon, C. J.). The Advisory Committee's proposed amendments to Rule 44 and Rule 5 would make counsel available equally to all defendants starting with their "initial appearance before the Commissioner." See 1964 U.S. CODE CONG. & AD. NEWS, Pamphlet No. 6, pp. 805–06, 832–33.

See also D.C.CODE § 2–2202, which provides for the assignment of Legal Aid Agency attorneys by the Commissioner "in preliminary hearings in felony cases," and requires him "to provide assignment of counsel as early in the proceeding as practicable."

3. 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

quickly as possible so that he may be advised of his rights and so that the issue of probable cause may be promptly determined. The arrested person may, of course be 'booked' by the police. But he is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt." [4]

■■ We think *Mallory* requires exclusion of the statements which the police elicited from Ricks on the day of his arrest. Mrs. M. positively identified Ricks to the satisfaction of the arresting officer about thirty minutes after the arrest. At least at that point, if not earlier,[5] the police were required to take Ricks before a committing magistrate unless further delay was occasioned by some proper purpose, such as the checking of a volunteered alibi or explanation "susceptible of quick verification." [6] It is said that such verification is required for the accused's protection against wrongful charges.[7] But Ricks did not volunteer an alibi or explanation. Instead he maintained his innocence

throughout the approximately two hours of detention after his arrest. The police activity during that period hardly reflects "the ordinary administrative steps required to bring a suspect before the nearest available magistrate." [8] And the questioning which preceded Ricks' statements precludes any claim that they constituted "spontaneous threshold confessions." [9]

■■ Nor can the delay of a preliminary hearing be justified on the ground that police activity for that period was required to investigate other unsolved crimes for which there was no probable cause to arrest the accused.[10] The ban against delay was not lifted each time the accused was confronted with another charge. Apparently the police were aware of this, for shortly after Mrs. M.'s positive line-up identification of Ricks, they tried to reach an Assistant United States Attorney about a "night arraignment." It is clear, however, that neither the Assistant's advice nor the posited inaccessibility of a committing magistrate licensed the police to continue "to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to sup-

4. *Id.* 354 U.S. at 454, 77 S.Ct. at 1359. And see D.C.CODE § 4–140.

5. We need not decide whether delay to conduct a line-up is "necessary" delay. Cf. Gatlin v. United States, 117 U.S.App. D.C. 123, 326 F.2d 666, 671 n. 9 (1963).

6. Mallory v. United States, 354 U.S. 449, 455, 77 S.Ct. 1356 (1957). And see Watson v. United States, 101 U.S.App.D.C. 350, 352–353, 249 F.2d 106, 108–109 (1957).

7. See, *e. g.*, Metoyer v. United States, 102 U.S.App.D.C. 62, 65, 250 F.2d 30, 33 (1957).

8. Mallory v. United States, 354 U.S. 449, 453, 77 S.Ct. 1356 (1957).

9. Compare, *Heideman v. United States*, 104 U.S.App.D.C. 128, 130–131, 259 F.2d 943, 945–946 (1958), cert. denied, 359 U.S. 959, 79 S.Ct. 800, 3 L.Ed.2d 767 (1959). And see Tatum v. United States, 114 U.S.App.D.C. 188, 313 F.2d 579 (1962).

In Ginoza v. United States, 279 F.2d 616 (9th Cir. 1960), the court, sitting en banc, ruled inadmissible a statement made after only 25 to 45 minutes of interrogation. It said: "Here, there was nothing spontaneous about Ginoza's admissions and damaging statements. Nor were they given promptly after his arrest. They were the product of intensive interrogation in private, surrounded only by law enforcement officers and after confrontation by an informer." *Id.* 279 F.2d at 621. The court also noted that "while aggravated circumstances existed in the McNabb case, and to some extent in Upshaw * * * and Mallory, the rule of exclusion for which they stand is not dependent upon such a showing." *Id.* 279 F.2d at 622.

10. See Coleman v. United States, 115 U.S. App.D.C. 191, 194, 317 F.2d 891, 894 (1963); Trilling v. United States, 104 U. S.App.D.C. 159, 164–167, 260 F.2d 677, 682–685 (1958); United States v. Meachum, 197 F.Supp. 803 (D.D.C.1961).

port the arrest and ultimately his guilt." [11]

Appellant maintains that his statements on Monday after his appearance before the Commissioner must also be excluded because they were the "fruit" of his earlier illegally obtained admissions. See Killough v. United States, 114 U.S.App.D.C. 305, 315 F.2d 241 (1962). We do not reach that question, however, because these statements must be excluded on another ground.

■ "The complicated process of criminal justice is * * * divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication." McNabb v. United States, 318 U.S. 332, 343, 63 S.Ct. 608, 614, 87 L.Ed. 819 (1943). This division underlies the scheme of the Federal Rules of Criminal Procedure. Detection and apprehension are police functions. But "without unnecessary delay" after arrest the police must relinquish custody and control of the accused to the committing magistrate, a judicial officer. His function is to advise the ac-

cused of his rights under Rule 5 and to conduct a hearing as soon as possible to determine whether there is sufficient probable cause to warrant further detention of the accused. Pending that determination, and in the absence of bail, the accused is transferred to jail where he is in the custody of the warden [12] subject to judicial, and not police, control.[13] The purpose of the transfer is "to avoid all the evil implications of secret interrogation" by the police. See McNabb v. United States, supra, 318 U.S. at 344, 63 S.Ct. at 614. Those implications would not be avoided if the police were free to continue interrogation after the transfer.

■ Here Ricks was committed to jail pending the determination of probable cause, and the hearing thereon was continued solely for the purpose of granting him an opportunity to obtain counsel.[14] But the police nipped this opportunity in the bud by virtually following upon Ricks' heels, from the Commissioner's hearing room into the cellblock, to continue their interrogation.[15] And later the same day, an Assistant United States

11. A magistrate is available twenty-four hours a day. "If because of some extraordinary circumstance no magistrate were available, it would not follow that questioning could continue." Coleman v. United States, 114 U.S.App.D.C. 185, 186, 313 F.2d 576, 577 (1962).

12. The Commissioner's Temporary Commitment form (Admin. Office Form 97) authorizing Rick's detention read as follows:
"To: The United States Marshal of the District of Columbia;
"You are hereby commanded to take the custody of the above named defendant and to commit him with a certified copy of this commitment to the custodian of a place of confinement within the District of Columbia approved by the Attorney General of the United States where the defendant shall be received and safely kept until discharge in due course of law. The above named defendant has been arrested but not yet fully examined by me upon the complaint of L... M..., charging * * * rape * * *."

13. See Trilling v. United States, 104 U.S. App.D.C. 159, 176, 260 F.2d 677, 694 (1958). And see MANUAL FOR UNITED STATES COMMISSIONERS 18 (Rev. ed. 1948): "Every commitment should be directed to the marshal or his deputies. No other officers are legally authorized to execute a commitment."

14. See note 2 *supra*.
The Commissioner testified that if Ricks had taken the initiative at his first appearance, and "had indicated to me that he was unable to secure counsel, I then would have offered to contact Legal Aid. * * *" In fact, this is what happened when Ricks appeared without counsel for his hearing three days later.

15. Since interrogation after the inception of the criminal process may be analogous to the taking of the accused's deposition, we note that the rules governing depositions in civil cases, substantially adopted by reference and inference in Criminal Rule 15 for depositions in criminal cases, provide that "the deposition of a person confined in prison may be taken only by leave of court on such terms as the court prescribes." FED.R.CIV.P., Rule 26(a).

Attorney moved in the District Court for Ricks' release to the police for four hours.[16] Despite the fact that Ricks had not yet obtained counsel,[17] the District Court released him to the custody of the police.

■ If Ricks had had counsel, the police would not have interrogated him in private and at length in the Commissioner's cellblock.[18] Nor could they have taken him uncounselled into the District Court for the hearing which culminated in his delivery to the police and further interrogation.[19] The mere fact that Ricks had not yet obtained counsel did not allow police to "continue to hound [him] * * * to give evidence against [himself] * * * until there is no escape at the trial * * *."[20] Ricks' right to counsel did not depend on a race with the police. The police activities here violated the general scheme of the Federal Rules of Criminal Procedure, and the specific order of the Commissioner implementing Ricks' right to counsel.

16. "The Government moves * * * that * * * Ricks * * * be released to the custody of a Deputy United States Marshal and two members of the Metropolitan Police Department * * * to assist in the solution of various housebreakings and related crimes upon the express desire of Calvin Lee Ricks to assist the Police Department."

17. Compare Rule 44, FED.R.CRIM.P.

18. On oral argument the Government conceded the truth of appellant's assertion that "When a defendant is represented by counsel, it is the practice of the United States Attorney not to permit any communication to be had by members of his staff or the police with the defendant except through, or with the permission of, counsel for the defendant." This is consistent with Canon 9, A.B.A. CANONS OF PROFESSIONAL ETHICS. Cf. Lee v. United States, 322 F.2d 770, 777 (5th Cir. 1963) :
"The Government's brief concedes that secret, ex parte interrogations of defendants are not conducted when a prisoner has counsel. Presumably, legal ethics forbid a United States Attorney or a Government agent to bypass the lawyer of a defendant fortunate enough to have the means to engage counsel. This is a prop-

The Supreme Court has recently ruled that a confession obtained by a police agent from an uncounselled defendant on bail after indictment could not be used against him at trial. Massiah v. United States, 84 S.Ct. 1199, 1204 (1964). The Court recognized as a "constitutional rule" the New York doctrine that "Any secret interrogation of the defendant, from and after the finding of the indictment, without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime." People v. Waterman, 9 N.Y.2d 561, 565, 216 N.Y.S.2d 70, 175 N.E.2d 445, 448 (1961). Mr. Justice White, in dissent, recognized that the Court's holding "would seem equally pertinent to statements obtained at any time after the right of counsel attaches, whether there has been an indictment or not * * *." And the New York Court of Appeals in People v. Meyer, 11 N.Y.2d 162, 227 N.Y.S.2d 427, 182 N.E. 103 (1962), and

er ethic for lawyers. But here the effect is to allow the prosecution to take advantage of an indigent prisoner without counsel, imperilling his constitutional rights by subjecting him to questioning intended to convict him, while recognizing an accused's freedom from secret inquisition if he can afford counsel."

19. Compare Rule 15, FED.R.CRIM.P., which sets out the procedure for taking a deposition of *any* witness at defendant's request. The Rule clearly contemplates the presence of counsel for all parties at the deposition. In fact, Rule 15(c) requires that "if a defendant is without counsel the court shall advise him of his right and assign counsel to represent him unless the defendant elects to proceed without counsel or is able to obtain counsel." Thus there can be no doubt that when the court orders in effect that a defendant's own "deposition" be taken purportedly at his own request (see note 15, *supra*), his counsel must be notified and given the opportunity to attend, and if he has no counsel, he must be told of his right to appointed counsel for the purpose of the "deposition." See also note 18, *supra*.

20. Ex parte Sullivan, 107 F.Supp. 514, 517 (D.C.Utah 1952).

People v. Rodriguez, 11 N.Y.2d 279, 229 N.Y.S.2d 353, 183 N.E.2d 651 (1962), has barred confessions obtained in the absence of counsel both after probable cause had been found and during continuance in the probable cause hearing.[21]

We need not decide whether the logic of *Massiah* requires all Federal courts to exclude such pre-indictment confessions since we may, and do, reach our conclusion here in the exercise of our local supervisory power.[22]

Reversed and remanded for a new trial.

BASTIAN, Circuit Judge (dissenting):

Appellant was indicted under a twenty-four count indictment charging as follows:

*Counts 1 through 5* (crimes against M. S.):

1. Housebreaking with intent to steal.
2. Housebreaking with intent to commit an assault.
3. Assault with a dangerous weapon.
4. Robbery.
5. Rape.

*Counts 6 through 9, and Count 11* (crimes against K.A.):[1]

6. Housebreaking with intent to steal.
7. Housebreaking with intent to commit an assault.
8. Robbery.
9. Assault with a dangerous weapon.
11. Rape.

*Counts 13 and 14* (crimes against L.L., B.L. and S.L.):

13. Housebreaking with intent to steal.
14. Assault with a dangerous weapon.

*Counts 15 through 19* (crimes against L. M.):

15. Housebreaking with intent to steal.
16. Housebreaking with intent to commit an assault.
17. Assault with a dangerous weapon.
18. Robbery.
19. Rape.

*Counts 20 through 24* (crimes against D. C.):

20. Housebreaking with intent to steal.
21. Housebreaking with intent to commit an assault.
22. Assault with a dangerous weapon.
23. Robbery.
24. Assault with intent to commit rape.

Appellant was found not guilty by reason of insanity of those counts charging rape (5, 11, 19) and assault with intent to commit rape (24). He was found guilty on all other counts. Appellant was sentenced by the trial judge to a total of twenty to sixty years. He appeals.[2]

Of the guilt of appellant in these cases there is not, in my opinion, the slightest doubt. No evidence was offered on behalf of appellant to show, or even intimate, that the atrocious offenses were not committed by him. His entire defense was insanity.[3]

21. Both *Meyer* and *Rodriguez* are cited in *Massiah* (at note 3). See also People v. Donovan, 13 N.Y.2d 148, 243 N.Y.S.2d 841, 193 N.E.2d 628 (1963).

22. See Fisher v. United States, 328 U.S. 463, 476, 66 S.Ct. 1318, 90 L.Ed. 1382 (1946); Griffin v. United States, 336 U.S. 704, 69 S.Ct. 814, 93 L.Ed. 993 (1949).

1. Counts 10 and 12 charged assault with a dangerous weapon and rape against one R.J. These counts were dismissed by the Government prior to trial because of the absence of the complaining witness, who was under treatment for a pre-existing epileptic condition.

2. Significantly, no appeal was taken from the verdicts and judgment holding appellant not guilty by reason of insanity on Counts 5, 11, 19 and 24.

3. In its entirety, appellant's counsel's opening argument was as follows:
  "I am an attorney in this town. I represent the defendant Calvin Ricks.

My colleagues, however, reverse Ricks' convictions on two grounds: (1) that Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), required the exclusion at trial of statements made by Ricks on Sunday, June 24, the day of his arrest (relating to the crimes against L.M. and S.L.); [4] and (2) that the admissions made by Ricks on Monday, June 25 (relating to all the crimes), following his appearance before the Commissioner, should have been excluded because Ricks' conversations with the police officers violated "the general scheme of the Federal Rules of Criminal Procedure" and "the specific order of the Commissioner" granting a continuance of the proceedings.

I vigorously disagree with both grounds, and I shall deal with each separately.

### I

### Confessions Made Prior to Appearance before the United States Commissioner

In the early morning hours of June 22, 1962, a man entered the first floor of L. M.'s home at 723 Massachusetts Avenue, N.E., threatened her with a knife, took money from her and raped her. Appellant was arrested at 3:50 or 3:55 P.M. on June 24, 1962, after his photograph

Calvin Ricks has pleaded not guilty to the indictment with which he is charged.

"Among other things, other defenses, we will prove and we will show that Calvin Ricks is suffering from a mental disease and that he did suffer from a mental disease during all of this period of time, and that these crimes, if committed by Calvin Ricks, were the product of this mental disease. We will have psychiatrists who will testify on this matter.

"I would ask that when you hear the evidence, bear this defense in mind, that this is one of the things that we will establish.

"Thank you very much."

And in his closing argument to the jury, he stated:

"We have entered the defense, plea, that this gentleman is not of sound mind and that these crimes, if committed by him, were the product of a mental illness."

had been identified by the victim from a group of photographs. He arrived at the police station at about 4:02 P.M. L. M. was called to the police station for the purpose of observing a line-up. She identified appellant from among the members constituting the line-up at approximately 4:25 P.M. The Sex Squad, which had jurisdiction over all such cases, was notified of Ricks' arrest. Two officers of that squad who had been investigating a number of similarly executed rapes in the same general neighborhood[5] were advised of the arrest, and arrived at the police station around 4:30 P.M. After consulting with the arresting officer, about "five or ten minutes after arrival," they talked to Ricks. After identifying themselves, they informed him of his right to remain silent and warned him that, if he said anything, it might be used against him in a future trial. Detective Wolfgang testified that he then:

"told him that he had been identified by [L.M.] that she was emphatic in her identification of him; the time and the date that this had happened, etc.; and where he was at that particular time and dates if he could tell me; if there was anybody—if he had any people that could verify his whereabouts at the time, would be glad to talk to these people; and things of that nature."

He then proceeded to discuss the psychiatric testimony only, and concluded:

"Ladies and gentlemen, I ask you, first, if you are satisfied beyond a reasonable [doubt] that it was this defendant who committed the crimes of which he is charged—if you are satisfied beyond a reasonable doubt of that, I ask you to bring in a verdict of not guilty by reason of insanity and put this man where he belongs, under care of people who know and who are qualified to care for him."

4. No such confessions were made regarding any of the other victims.

5. The crimes against L.M. were committed at premises 723 Massachusetts Avenue, N.E.; that against S.L. at 704 East Capitol Street; those against M.S. at 121 Fifth Street, S.E.; those against D.C. at 712 East Capitol Street; those against K.A. at 613 A Street, N.E.

Detective Wolfgang also testified:

"I didn't have reason to doubt it [L.M.'s identification of Ricks], but by the same token, I didn't in my own mind feel that that was—that identification alone was conclusive enough."

(L.M. later testified that since the attack had occurred in her unlighted room, she had been able to view her assailant only by the light from a flashlight turned on and off intermittently by him, and by the illumination from a near-by street-light.)

About 5:30 P.M. L.M. recounted, in Ricks' presence, the details of the attack upon her. Immediately upon her leaving the conference room, about 5:55 or 6:00 P.M., Ricks confessed to the commission of the rape. Thus, this confession was made approximately two hours after his arrest.

On June 1, 1962, just three weeks before the crimes against L.M., premises 704 East Capitol Street were entered in the same manner as were the premises of L.M. S.L., sleeping on a couch, was awakened when a blanket was placed over her face. When she started to scream, her throat was slashed several times with a safety razor blade, part of which remained embedded in her neck. Upon hearing her screams, S.L.'s son-in-law went to her rescue and chased the attacker from the house.

Ricks was placed in a line-up at 6:05 P.M. on Sunday, June 25, 1962, at which time S.L. was unable to identify him as her assailant. After the line-up had been completed at 6:10 P.M., however, appellant was told by the police that his finger-prints had been found on the razor blade used in the attack upon S.L. Passing the son-in-law of S.L. on his way back to the detectives' office, Ricks stopped and told him: "You're the man that chased me out of the house when the woman on the second floor screamed."

With regard to the statements made prior to the appearance of appellant before the United States Commissioner, it is to be noted that his confession concerning L.M. was made within two hours after he had been apprehended, and the statement to S.L.'s son-in-law was made within two and a half hours after his arrest. No other statements were made prior to his appearance before the United States Commissioner, nor were any offered in evidence, so that we have only to consider, on this phase of the case, the confession of the crimes against L.M. and the statement relating to the S.L. case.

My colleagues apparently find little difficutly in determining that the statements of Ricks above referred to were inadmissible. I, however, feel that unless we ignore the word "unnecessary" in FED.R.CRIM.P. 5(a), there is absolutely no warrant for excluding Ricks' statements. Certainly the fact that he was not presented to the United States Commissioner until 10:00 o'clock of the morning after his arrest would not make inadmissible the statements made within two hours after arrest. See United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944).

I think the majority in this case has extended the *Mallory* doctrine far beyond the import of that decision. Contrary to the situation in *Mallory,* where the accused was questioned continuously by four detectives, there was no such questioning in the instant case. The import of *Mallory* and such cases as Heideman v. United States, 104 U.S.App.D.C. 128, 259 F.2d 943 (1958), cert. denied, 359 U.S. 959, 79 S.Ct. 800, 3 L.Ed.2d 767 (1959), is that it is the duty of the arresting officers to see that a prisoner is arraigned without unnecessary delay, but this does not indicate that "the command calls for mechanical or automatic obedience." The admissibility of confessions received during a period of delay cannot be measured by a time clock. See Muschette v. United States, 116 U.S. App.D.C. 239, 322 F.2d 989 (1963). The facts and circumstances must be considered. Although the *Mallory* doctrine is clear and definite, the opinion of the Supreme Court in that case leaves one essential aspect without any definition. The

meaning of the vital term "unnecessary delay" is left open, presumably for delineation by future decisions. The opinion makes it clear, however, that the term is flexible and that the extent of a permissible delay depends on circumstances. Thus, it contains the following comment:

> "The duty enjoined upon arresting officers to arraign 'without unnecessary delay' indicates that the command does not call for mechanical or automatic obedience. Circumstances may justify a brief delay between arrest and arraignment, as for instance, where the story volunteered by the accused is susceptible of quick verification through third parties. But the delay must not be of a nature to give opportunity for the extraction of a confession." Mallory v. United States, 354 U.S. at 455, 77 S.Ct. at 1359.

Similarly, in the Notes of the Advisory Committee to Rule 5(a) of the Rules of Criminal Procedure, it is observed:

> "What constitutes 'unnecessary delay', i. e., reasonable time within which the prisoner should be brought before a committing magistrate, must be determined in the light of all the facts and circumstances of the case. The * * * authorities discuss the question what constitutes reasonable time for this purpose in various situations."

In this case, the main time between appellant's arrest and his statements was spent in booking, processing, calling witnesses to the crimes, and giving appellant an opportunity to explain where he was if he was not at the scene of the crimes. The mere appearance of a man before the United States Commissioner and the holding of him for action by the Grand Jury is a stigma which cannot be easily erased, and the police are not anxious to arrest an innocent person. Appellant was living with his wife; he was a man of superior intelligence; he was employed at an adequate salary; and he should have been able to exculpate himself, if that were possible. In *Heide-man* we used language particularly applicable here:

> "At the outset, the police, assuming they have probable cause for arrest, are entitled to ask the arrested suspect what he knows about a crime. If he denies knowledge, they are entitled to state to him what evidence they have and ask whether he cares to comment upon it. A strong circumstantial case which would satisfy the U. S. Commissioner, prima facie, might well be explained away by a suspect who knew what information the police relied on—hence leading to no charge being made. If the suspect continues to deny knowledge, the police are entitled to conclude the interview by saying, in effect, 'Do you have anything further to tell us, or do you just want to let it stand the way it is?' which was what [the detective] asked appellant. Such questions as these the police may ask—indeed *should* ask; it is only when the questioning crosses into what can be termed 'grilling,' or is continued beyond the brief period allowed, that the resulting confession may be held inadmissible." 104 U.S.App.D.C. at 130–131, 259 F.2d at 945–946.

Cf. Trilling v. United States, 104 U.S.App.D.C. 159, 260 F.2d 677 (1958); Metoyer v. United States, 102 U.S.App.D.C. 62, 250 F.2d 30 (1957). And see Muschette v. United States, supra.

Also in *Heideman,* we distinguished *Metoyer* from *Mallory* and called attention to the fact that:

> "In the Mallory case, contrariwise, an afternoon and entire night separated arrest from arraignment, and the time was intermittently used for extensive interrogation of the accused, including use of a lie detector test and simultaneous questioning by a number of officers. In the pre-arraignment interval there, more occurred than the mere handling of administrative details and the corroborating of the accused's identifi-

cation." 104 U.S.App.D.C. at 130, note 2, 259 F.2d at 945, note 2.

In making his ruling on the motion to suppress, the trial judge in the instant case succinctly stated the point as follows:

"She was sleeping in the room when this thing started and I am sure she wasn't sleeping in full light.

"Even if she had been, which I am sure she wasn't and I am sure when she gets on the stand, she will so testify, these fleeting identifications when a person is absolutely terrorized—it is one thing, perhaps, when you are standing around Sears Roebuck store, looking at somebody, not scared to death, and when somebody has a knife on you, raping you and threatening you.[6]

"I would hate—I would hate to ever have to sentence someone to death for rape on an identification like that, I would not like it in any case, but I would be very disquieted if that were the only evidence brought in before a jury and the jury found him guilty and recommended the death penalty.

"I don't know of anything that would upset me more.

"I feel that the admission, and I take it that actually the statement made at 6:05 was an admission rather than a confession—

\*　　\*　　\*　　\*　　\*

"does not violate the Mallory Rule or Rule 5(a); that the admission to [S. L.'s son-in-law], which he apparently volunteered as he went up the steps, does not violate Rule 5(a); so when we come to the confessions on the morning of the 25th, we do not have any poisonous tree to have fruit thereof." [7]

With this I wholeheartedly agree. My opinion is that this court has too often extended *Mallory* far beyond its import. My colleagues make much of the fact that one witness stated that L.M.'s identification was sufficient to go to arraignment. However, the officer in charge, Detective Wolfgang, testified to the contrary. The trial judge, hearing the motion to suppress, had this to say:

"Officer Kline said that the identification was ample for him to go to arraignment. I was much more impressed with Officer Wolfgang, Detective Wolfgang, who said in his opinion, he didn't want to go to arraignment or take a man before the Commissioner on a crime of this sort simply on this type of identification.

"I have a great deal more respect for Detective Wolfgang's feeling in the matter because the cases that give me the most trouble, as I sit here as a Judge, are those cases where the only evidence of the crime or the primary evidence of a crime is a fleeting glimpse of someone by a witness while a crime is being committed."

We must remember that the trial judge has more opportunity to see the witnesses and to determine the matter than do we.

I think the statements made prior to appearance before the United States Commissioner were properly admitted.

It is my feeling that the thinking of some members of this court is to prevent the offering in evidence of *any* statements voluntarily made by an accused after being placed under arrest. I cannot believe the Supreme Court had any such thought in mind. (See quotation from *Mallory,* supra.) This circuit has in some cases read into the *Mallory* decision a meaning widely divergent from that ascribed to it by other circuits. See, e. g., United States v. Ladson, 294 F.2d 535 (2d Cir.), cert. denied, 369 U.S. 824, 82 S.Ct. 840, 7 L.Ed.2d 789 (1961);

6. This allusion to the Sears Roebuck store had reference to White v. United States, 114 U.S.App.D.C. 238, 314 F.2d 243 (1962), where the accused was identified in the daytime.

7. This, of course, relates to the claim that the June 24 confessions, being allegedly illegally obtained, made illegal not only the confessions as to L.M. and S.L. but also those relating to the other victims.

United States v. Vita, 294 F.2d 524 (2d Cir.), cert. denied, 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788 (1961); Muldrow v. United States, 281 F.2d 903 (9th Cir. 1960); Holt v. United States, 280 F.2d 273 (8th Cir. 1960), cert. denied, 365 U. S. 838, 81 S.Ct. 750, 5 L.Ed.2d 747 (1961).

## II

### Confessions after Original Appearance before the United States Commissioner

I turn now to a consideration of the admissibility of the statements made by appellant after his first appearance before the United States Commissioner, on June 25, 1962, and after his appearance before District Judge McGarraghy later the same day.

The uncontroverted record shows the following: At 9:55 A.M. on June 25, 1962 (the day after appellant's arrest), complaint for violation of D.C.CODE § 22–2801 was filed against Ricks charging the rape of L.M., and that at 10:20 A.M. he was brought before the United States Commissioner. According to the Commissioner's uncontradicted testimony, Ricks was

"advised that he was there as a result of the complaint charging him with violation of Title 22 of the D. C.Code, Section 2801, specifically, that on June 22, 1962, at premises 723 Massachusetts Avenue, Northeast, in the District of Columbia, that he did have carnal knowledge of or rape [L.M.] forcibly and against her will.

"Having been apprised of this complaint, I then advised the defendant that in regard to this complaint he was not required to make any statement; that any statement he made could be used against him at this or any other hearing.

"I further advised the defendant he had a right to retain the services of an attorney, and that he was entitled to a preliminary hearing in this matter, and at such hearing he would have a right or his counsel would have a right to cross-examine any witnesses against him and introduce testimony in his own behalf.

"I then told the defendant that the preliminary hearing was not the trial, and that he had a choice at that hearing of having a hearing then and there, or that he might waive the hearing, and I explained to him what a waiver meant; that the matter would then be sent directly to the Grand Jury without the benefit of a hearing, and if he was indicted he would be called upon to enter a plea of guilty or not guilty, and if the matter was ignored he would be freed from custody in the matter; and that finally he had a third choice of requesting a continuance of the matter for the purpose of contacting counsel or contacting any member of his family relative to securing counsel for him.

"At that time the defendant chose to request a continuance for the purpose of contacting his family regarding the retention of counsel in his behalf. The case at his request was continued for a short period to the date of June the 28th."

By "Order of Temporary Commitment," Ricks was then committed to the custody of the United States Marshal and taken to the cell block behind the Commissioner's office pending transfer to the District of Columbia jail. Thereupon, Detective Wolfgang of the Sex Squad and Detective Wallace of the Ninth Precinct went to the cell block and requested to see the prisoner. The Deputy United States Marshal in charge stated that Ricks would have to consent to see them. While the officers waited, the Deputy went to Ricks' cell and was given the necessary permission by Ricks. The Deputy informed the officers of Ricks' consent and asked them to wait until the interviewing room was available, as it was in use at the time. The room was vacated a few minutes later and the officers met with Ricks. They

advised him that "he didn't have to say anything or he didn't have to talk to us."

The officers informed Ricks that they had brought L.M. to the courthouse, but that he did not have to see her if he did not want to. Ricks, however, said that he did want the opportunity to apologize to her again. L.M. entered the room and was about to be seated when Ricks asked that she step outside the room, that he wanted to talk to the officers alone. As soon as she had left the room, Ricks stated that "he wanted to get himself straight, that he wanted to straighten everything out," and requested a piece of paper and a pencil, which were provided. He then indicated in writing seven various locations where he had broken into houses, further indicating that he had sexually attacked a woman in four of the instances, all of which assaults were under investigation by the police department. Wolfgang then showed him a copy of a police memorandum which enumerated and summarized various unsolved sexual attacks which were under investigation. By signing his name beneath the particular summary, Ricks indicated those crimes which had been of his doing. He then told the officers that he wanted to see the victims, to be able to "talk to them" and "apologize to them." When he was told that he probably would be taken to the jail, Ricks asked if he could talk to them there. The officers were not sure that they could bring the victims to the jail, but indicated that they would attempt to locate somebody in the United States Attorney's office who could advise them. At 11:55 A.M. the officers left.

The record next indicates that at 2:23 P.M. on the same day, appellant appeared with an Assistant United States Attorney before Judge McGarraghy of the United States District Court. Motion was made that Ricks be released to the custody of a Deputy United States Marshal and two named members of the Metropolitan Police Department to assist in the solution of certain unsolved crimes, the motion being made "upon the express desire of Calvin Lee Ricks to assist the Police Department." The following then transpired:

"THE COURT: Are you Calvin Lee Ricks?

"THE DEFENDANT: Yes, sir.

"THE COURT: You had a hearing before the United States Commissioner this morning?

"THE DEFENDANT: Yes, sir.

"THE COURT: And he advised you of your rights, I suppose, and told you that you are not required to make any statement of any kind regarding these charges against you?

"THE DEFENDANT: Yes, sir.

"THE COURT: You understand that, do you?

"THE DEFENDANT: Yes, sir.

"THE COURT: And I am advising you again to the same effect, that you are not required to make any statement and that any statement that you may make may be used against you. I am told by the United States Attorney that you wish to go with the police to various scenes to help them in their investigation of certain crimes, is that right, Mr. Murphy [the United States Attorney]?

"MR. MURPHY: That is right, Your Honor.

"THE COURT: Is that right, do you want to do that?

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you understand that you don't have to do it?

"THE DEFENDANT: Yes, sir, I understand.

"THE COURT: And you are asking me to permit you to go out with the police officers for that purpose?

"THE DEFENDANT: Yes, sir.

"THE COURT: You want to do it?

"THE DEFENDANT: Yes.

"THE COURT: Very well. I want you to bear in mind again that you are not required to do it and if you

do do it that anything that transpires and anything you say may be used against you. Do you understand that?

"THE DEFENDANT: I understand that, sir.

\* \* \* \*. \* \*

"THE COURT: I want to read this order to you. You can hear me all right, can't you? ·

"THE DEFENDANT: Yes, sir.

"THE COURT: This is an order which is headed,. 'Order for temporary release from custody.

'Upon consideration of the oral motion of the United States Attorney in and for the District of Columbia, request that Calvin Lee Ricks, now committed to the District of Columbia Jail, be released into custody of the Deputy United States Marshal and two members of the Metropolitan Police Department for the District of Columbia to assist in the solution of various housebreakings and related crimes, and upon express desire of said Calvin Lee Ricks to assist the Metropolitan Police Department in the solution of these crimes committed in the District of Columbia.

'It is this 25th day of June, 1962, ordered that the Superintendent of the District of Columbia Jail will release the prisoner, Calvin Lee Ricks, into the custody of the duly authorized Deputy United States Marshal and Detective Lawrence F. Wallace and Detective Sergeant John Klein, members of the Metropolitan Police Department, for a period not to exceed four hours, beginning at 2:30 p. m., June 25th, 1962, and the said Deputy United States Marshal and Detective Lawrence F. Wallace and ˙ Detective Sergeant John Klein will return the prisoner, Calvin Lee Ricks, into the custody of the Superintendent of the District of Columbia Jail not later than 6:30 p. m. June 25, 1962.'

"Do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: And do you want me to sign this order?

"THE DEFENDANT: Yes, sir.

"THE COURT: Very well. I will sign it."

Ricks then accompanied the deputy marshal and the detectives to the Sex Squad office of Police Headquarters, where M.S., D.C. and K.A. were present. At 2:45 P.M. Ricks spoke first with M.S., who repeated to Ricks what had happened to her on the night that she was assaulted; Ricks apologized, and also explained how he had made a hole in the screen door with a small butcher knife in order to gain entry. At 2:51 P.M., D.C. related her recollection of what had transpired on the night she was assaulted; Ricks acknowledged the crime and asked her forgiveness. At 2:56 P.M., K.A. stated to Ricks what had happened on the night of her alleged assault; Ricks himself then recounted certain additional facts relating to the incident.

When the officers subsequently talked with Ricks about the knife used in the attack on L.M., the crime for which he had been arrested, he pointed out that the police did not have the knife but that it was in the kitchen drawer at his home, and said that if they would take him there, he would get it for them. The officers, still in the company of the deputy marshal, took Ricks to his home, where he gave the detectives the knife which he said he had used in the assault on L.M. Ricks was then returned to the jail.

On June 28, 1962, Ricks again appeared before the United States Commissioner. Upon his statement that he could not afford to retain counsel, the Commissioner offered to have a member of the Legal Aid Agency represent him. Ricks accepted this offer and counsel was provided promptly. Following a conference between Ricks and his counsel, a hearing was requested and held.

On the basis of this factual background, my colleagues determine that all

statements made by Ricks after his appearance before the Commissioner on June 25 must be excluded.[8] The authority invoked is "our local supervisory power." I most heartily disagree. In my opinion, and under prior law, Ricks was accorded all appropriate safeguards; his statements were properly admitted into evidence.

Rule 5(b) requires the Commissioner to inform the accused, among other things, "of his right to retain counsel," and further, to "allow the defendant reasonable time and opportunity to consult counsel * * *." In this case, the Commissioner fully informed Ricks of his rights. In compliance with Rule 5(b), the proceedings were continued by the Commissioner at Ricks' request, to afford him the opportunity to retain and consult with counsel. It is clear, therefore, that Ricks was accorded everything to which he was entitled under Rule 5. Cf. Moon v. United States, 115 U.S.App.D.C. 133, 317 F.2d 544 (1962), cert. denied, 375 U.S. 884, 84 S.Ct. 154, 11 L.Ed.2d 113 (1963); Porter v. United States, 103 U.S.App.D.C. 385, 258 F.2d 685 (1958), cert. denied, 360 U.S. 906, 79 S.Ct. 1289, 3 L.Ed.2d 1257 (1959).

FED.R.CRIM.P. 44 provides:

"If the defendant appears in court without counsel, the court shall advise him of his right to counsel and assign counsel to represent him at every stage of the proceeding unless he elects to proceed without counsel or is able to obtain counsel."

That rule, however, has no application to preliminary hearings, much less to Ricks' pre-preliminary hearing situation. The Advisory Committee's Notes to Rule 44 state:

"The rule is intended to indicate that the right of the defendant to have counsel assigned by the court relates only to proceedings in court and, therefore, *does not include preliminary proceedings before a committing magistrate. Although the defendant is not entitled to have counsel assigned to him in connection with preliminary proceedings,* he is entitled to be represented by counsel retained by him, if he so chooses." [Emphasis added.] [9]

---

8. A similar position, *viz.* that questioning by the police "in violation of the spirit of the Commissioner's order" required exclusion of a defendant's voluntary statements, was taken by Judges Bazelon and Edgerton in a separate opinion in Trilling v. United States, 104 U.S.App.D.C. 159, 260 F.2d 677 (1958), and was specifically rejected in that case in an opinion by three other members of the court. Likewise, this rationale was implicitly rejected by this court in Goldsmith v. United States, 107 U.S.App.D.C. 305, 277 F.2d 335, cert. denied *sub nom.* Carter v. United States, 364 U.S. 863, 81 S.Ct. 106, 5 L.Ed.2d 86 (1960).

9. Council v. Clemmer, 85 U.S.App.D.C. 74, 177 F.2d 22, cert. denied, 338 U.S. 880, 70 S.Ct. 150, 94 L.Ed. 540 (1949). See, however, the Committee's Second Preliminary Draft of Proposed Amendments to the Rules of Criminal Procedure for the United States District Courts, proposed Rule 44, which provides in part:
"(a) Right to Assigned Counsel. Every defendant who is unable to obtain counsel shall be entitled to have counsel assigned to represent him at every stage of the proceedings from his initial appearance before the commissioner or the court through appeal, unless he waives such appointment."
Even under the proposed rule Ricks' right to counsel would not have been breached by the Commissioner. The Advisory Committee's Notes to the proposed rule state:
"The phrase 'from his initial appearance before the commissioner or court' is intended to require the assignment of counsel as promptly as possible *after it appears that the defendant is unable to obtain counsel.*" [Emphasis added.]
In this case, there was no indication that Ricks was "unable to obtain counsel"; he had not tried. The proceedings were continued at his request in order that he might have an opportunity to obtain counsel. Nor was his financial history such that indigence should have been apparent to the Commissioner. On the contrary, the record indicates that he had been steadily employed on a painting crew for at least one year prior to his arrest and, at the time of his arrest, was earning $24 a day as a supervisor. Moreover, his wife was working as a nurse in a District of Columbia hospital.

In addition, no constitutional direction for counsel's presence would require the exclusion of Ricks' post-presentment statements. Even Massiah v. United States, 84 S.Ct. 1199 (1964), decided May 18, 1964, in which the Supreme Court extended the Sixth Amendment guarantee of counsel's presence to the post-indictment stage, would not apply to Ricks' pre-preliminary hearing situation.[10] Moreover, unlike Massiah, Ricks was not unaware of either the identity of his questioners or the purpose for his assisting the police.[11] He was fully informed of his rights by the Commissioner and a continuance was immediately granted. *He was not required to plead; no preliminary hearing was held; no hearing was waived.* I cannot see how Ricks' post-presentment statements were anything but entirely independent statements, made with full knowledge of his rights.

Finally, D.C.Code § 2–2202 provides in pertinent part:

"The [Legal Aid] Agency shall make attorneys available to represent indigents in criminal proceedings in the United States District Court for the District of Columbia and in preliminary hearings in felony cases * * *."

\* \* \* \* \* \*

"\* \* \* The judges or other presiding officers of the several courts and tribunals may assign attorneys employed by the Agency to represent indigents * * *.

"Each such court and tribunal will make every reasonable effort to provide assignment of counsel as early in the proceeding as practicable."

At the outset, I should state that I feel that § 2–2202 could not have been a predicate for the Commissioner's appointment of counsel, much less that it *required* such an appointment.[12] Moreover, as related to the circumstances here, the statute provides for counsel for indigents in preliminary hearings. As we have seen, *no preliminary hearing was held* in this case prior to Ricks' statements. But assuming *arguendo* that the statute is applicable, I further feel that it cannot be reasonably interpreted to require exclusion of Ricks' post-presentment statements. Absent is the requisite causal relationship between an assumed violation of the statute and Ricks' subsequent statements. The purpose of appointment of counsel under the statute is to provide assistance to an indigent in intelligently dealing with the preliminary hearing situation. Here, however, Ricks' admissions did not grow out of inability to cope with a preliminary hearing; none was in

10. "We hold that the petitioner was denied the basic protections of that [Sixth Amendment] guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him *after he had been indicted* and in the absence of his counsel." Massiah v. United States, 84 S.Ct. 1199, 1203 (1964). (Emphasis supplied.)

11. " 'In this case, Massiah was more seriously imposed upon * * * because he did not even know that he was under interrogation by a government agent.' " Massiah v. United States, 84 S.Ct. 1199, at 1203 (1964), quoting from Judge Hayes' dissent in United States v. Massiah, 307 F.2d 62, 72–73 (2d Cir. 1962).

12. § 2–2203 D.C.Code provides in part: "The legal representation services hereinbefore described shall be provided *only* to such persons who first subscribe and state in writing upon oath that such person has been unable to hire an attorney and is further unable to pay modest attorney's fee * * *".

In this case, no such affirmation was made by Ricks. Strictly speaking, therefore, the Commissioner could not have appointed an attorney to represent him. Even if the two sections are read to require the Commissioner to inform the accused of the availability of an oath asserting indigence, it is more than dubious that Ricks could have subscribed to such an oath. [See note 9.] At the time of his arrest, he had $20 in his pocket, and to speculate that he was "unable to afford a modest attorney's fee" is to assume a fact in order to postulate a rule of law.

progress. His statements were not unintelligently made pleas or judicial admissions. On the contrary, they were completely independent, voluntary statements, made with full knowledge of his rights. In my opinion, unless the statute is intended to seal the lips of an accused,[13] Ricks' statements were not a consequence of a violation of § 2–2202. They were not a product of ignorance of the law which the presence of counsel would have avoided. Ricks had already been fully apprised of his rights by the Commissioner, including his right to remain silent. While it may be that there is a qualitative difference in advice between the Commissioner's statement to Ricks and what counsel might suggest to an accused-client, I do not feel that the statute here involved is in any way predicated upon such a differentiation.

I think the statements made immediately after Ricks' appearance before the Commissioner, being voluntary and with knowledge of his rights, were not obtained as a result of a violation of § 2–2202 and were properly admitted into evidence. As we observed in Jackson v. United States, 109 U.S.App.D.C. 233, 237, 285 F.2d 675, 679 (1960):

> "[T]he Supreme Court has made it clear that a challenged confession voluntarily given after fair warning may be competent. [Citing United States v. Bayer, 331 U.S. 532, 541, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947); United States v. Carignan, 342 U.S. 36, 45, 72 S.Ct. 97, 96 L.Ed. 48 (1951)]. We have so decided as to a confession reaffirmed after judicial caution has been imparted. [Citing Goldsmith v. United States, 107 U.S.App.D.C. 305, 310, 277 F.2d 335, 340, cert. denied sub nom. Carter v. Unit-

ed States, 364 U.S. 863, 81 S.Ct. 106, 5 L.Ed.2d 86 (1960); Watts v. United States, 107 U.S.App.D.C. 367, 371, 278 F.2d 247, 251 (1960)].

Regarding Ricks' admissions following the District Court's order allowing him to accompany the police, there is no room for doubt that those statements were properly admitted. Robinson v. United States, 113 U.S.App.D.C. 372, 308 F.2d 327 (1962), cert. denied 374 U. S. 836, 83 S.Ct. 1887, 10 L.Ed.2d 1058 (1963); Goldsmith v. United States, 107 U.S.App.D.C. 305, 277 F.2d 335, cert. denied *sub nom.* Carter v. United States, 364 U.S. 863, 81 S.Ct. 106 (1960); Tyler v. United States, 90 U.S.App.D.C. 2, 193 F.2d 24 (1951), cert. denied, 342 U.S. 908, 72 S.Ct. 639, 96 L.Ed. 1326 (1952). From the record of the proceedings before Judge McGarraghy quoted above, nothing could be clearer than that Ricks was completely aware of the purpose for his presence before the court, and that he desired to help the police. Since the order signed by the District Judge specifically provided that Ricks was to be accompanied by a deputy marshal as well as the two named officers, it is apparent that Ricks was not subjected to covert interrogation.[14] The presence of the deputy marshal insured against that very possibility. There is simply not one iota of evidence that Ricks' conduct during that day was anything but completely voluntary, and the record is replete with evidence affirmatively indicating his desire to assist the police.

For the above reasons, I am of the opinion that Ricks' statements, both immediately following his presentment before the Commissioner and following the issuance of the District Court order,

---

13. In prior cases the presence of counsel has not insured the silence of the accused. See, *e. g.*, Jackson v. United States, 109 U.S.App.D.C. 233, 237, 285 F. 2d 675, 679 (1950), cert. denied, 366 U.S. 941, 81 S.Ct. 1666, 6 L.Ed.2d 852 (1961); Goldsmith v. United States, supra note 8.

14. Even if Ricks were considered "in the custody of the police," that fact alone would not render his statements inadmissible. McNabb v. United States, 318 U.S. 332, 346, 63 S.Ct. 608, 87 L.Ed. 819 (1943); Jackson v. United States, supra note 13. Cf. United States v. Mitchell, 322 U.S. 65, 69, 70, 64 S.Ct. 896 (1944).

were properly admitted into evidence by the trial judge.

I do not feel that there is any warrant to exercise the court's "supervisory power" in this case. This authority is one for the formulation of evidentiary rules in absence of other authority. In view of the circumstances here involved, as well as substantial precedent militating in favor of a contrary result, the promulgating of a rule which will determine the course of future controversies not now before the court seems unwise.

In addition, there is a substantial doubt in my mind that our "supervisory powers" give rise to an ability to establish new law, in lieu of statutory or decisional authority.

I would affirm the judgment of the District Court.