**UNITED STATES of America**

v.

**Richard B. HENDRICKSON, Robert Glenn McKinney, Richard B. Hendrickson, Appellant.**

**No. 17666.**

United States Court of Appeals Third Circuit.

Argued Sept. 18, 1969.

Decided Oct. 15, 1969.

Rehearing Denied Dec. 10, 1969.

Milton T. Lasher, Hackensack, N. J., for appellant.

Marlene Gross, Asst. U. S. Atty., Newark, N. J., for appellee (Donald Horowitz, U. S. Atty., Newark, N. J., on the brief).

Before BIGGS, KALODNER and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

Defendant Hendrickson appeals from a judgment of sentence in the District Court of New Jersey following a jury's verdict of guilty of mail fraud (18 U.S.C. § 1341) and conspiracy to commit mail fraud (18 U.S.C. § 371).

### I.

Defendant claims that his constitutional rights to counsel under the Sixth Amendment and to due process under the Fifth Amendment were violated because counsel was not assigned to him at the time of his arraignment before the district judge on February 5, 1965.

It is true that Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932), quoted in Johnson v. Zerbst, 304 U.S. 458, 463, 58 S.Ct. 1019, 82 L.Ed.

1461 (1938) speaks of the accused's need of the guiding hand of counsel "at every step" in the proceedings, and Rule 44 of the Federal Rules of Criminal Procedure, as it existed at the time of defendant's arraignment, provided that a defendant is entitled to have counsel to represent him "at every stage" of the proceeding.[1] We agree, however, with the view expressed by the Court of Appeals for the District of Columbia Circuit in McGill v. United States, 121 U.S.App.D.C. 179, 348 F.2d 791, 793 (1965) that "the general language in Johnson v. Zerbst and Rule 44 must be read in the light of their fundamental purpose to provide the guiding hand of counsel at every step where an accused who is without counsel may be prejudiced. * * * The exaltation of abstraction above reality should not be condoned for the purpose of denying constitutional rights and should not be indulged for the purpose of creating constitutional rights."[2]

Defendant suffered no prejudice at his arraignment; he pleaded not guilty, his bail was continued and he gave no evidence at the arraignment which later was used against him. In view of this lack of prejudice, we do not believe he suffered a deprivation of his constitutional rights.

Moreover, it is clear from the discussion between the district judge and defendant at the arraignment that defendant intended to retain counsel of his own choosing. As a result, a plea of not guilty was entered on defendant's behalf and nothing further was done pending his retention of counsel. When it became known to the court that defendant desired court-appointed counsel, the court inquired into his indigency, and being satisfied thereof appointed counsel for him on May 10, 1968. His case was not brought to trial until approximately five months later. It is clear, therefore, that defendant suffered no constitutional deprivation of due process or of the right to counsel.

## II.

■ Defendant also claims that the evidence was insufficient to establish his guilt beyond a reasonable doubt. This claim requires a brief summary of the evidence.

The main features of the government's case were presented by one Taylor, who was a party to the scheme, originating in Louisville, Kentucky, in which the government alleged the defendant was involved. Taylor testified that he was sent by one McKinney, who was the leader of the group, to Newark where he opened checking accounts at a number of banking institutions in the area. He made small initial deposits, under fictitious names and then advised McKinney of the information regarding the accounts he had opened and shipped him blank checks

1. The arraignment was held prior to the amendments to Rule 44 of the Federal Rules of Criminal Procedure adopted February 28, 1966, effective July 1, 1966. At the time of the arraignment the Rule provided:
"If the defendant appears in court without counsel, the court shall advise him of his right to counsel and assign counsel to represent him at every stage of the proceeding unless he elects to proceed without counsel or is able to obtain counsel."
As amended in 1966, Rule 44 now provides in pertinent part:
"(a) Right to Assigned Counsel. Every defendant who is unable to obtain counsel shall be entitled to have counsel assigned to represent him at every stage of the proceedings from his initial appearance before the commissioner or the court through appeal, unless he waives such appointment.

2. Other cases under the former Rule 44 have similarly held that it is not violated by lack of counsel at arraignment where the defendant pleads not guilty and in some cases even where he pleads guilty. Council v. Clemmer, 85 U.S.App.D.C. 74, 177 F.2d 22 (1949), cert. denied 338 U.S. 880, 70 S.Ct. 150, 94 L.Ed. 540 (1949). See the review of the cases in Ricks v. United States, 118 U.S.App.D.C. 216, 334 F.2d 964, 966–967, n. 2 (1964).
White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), is readily distinguishable because not only was the proceeding there before a committing magistrate, but defendant there entered a plea of guilty and thus foreclosed his right to defend.

on the accounts. The testimony of other witnesses showed that these blank checks were filled out in Louisville, endorsed, and deposited in savings accounts opened in the Newark area by the defendant under fictitious names. Withdrawals were then made from the savings accounts before the checks deposited were dishonored by the banks on which they were drawn.

Taylor identified a letter which he said the defendant had written when they were both in a prison cell in Louisville with another man named Blacketer. Taylor testified that he saw the defendant write and sign the letter and that he himself and Blacketer had each written and signed a notation on it. Blacketer, called as a witness by the government, identified his own notation and signature on the letter. A Louisville postal inspector, to whom the letter was written, identified it as having come from the defendant. This letter was used as the standard with which an examiner of questioned documents for the postal inspection service compared the handwriting on the various checks and other instruments used in the scheme to defraud the institutions and savings banks. He gave it as his opinion that the handwriting on these checks and other instruments was the same as that in the body of the letter and the signature to it.

The evidence clearly was adequate to support the verdict, and defendant's complaint of its insufficiency is unjustified. Indeed, the trial judge carefully explained to the jury the manner in which they should weigh the testimony of Taylor, the admitted accomplice, and also explained to them fully the effect of the testimony of the handwriting expert, their function in evaluating it and the use to be made of the letter as the standard for comparison of the handwriting.

There is, therefore, no basis for overturning the jury's verdict for insufficiency of the evidence.

### III.

■ Finally, defendant also claims that he was denied the right to compulsory process under the Sixth Amendment and of due process under the Fifth Amendment because the district judge refused an adjournment of the trial of the case for another week or ten days at the conclusion of the government's case so that defendant could recall Blacketer as his witness.

Blacketer had already testified as a witness for the government regarding the letter which the government used as the standard of defendant's handwriting. At that time, defendant knew that Blacketer wished to be excused when his testimony was concluded so that he could enter a hospital for an operation. When Blacketer had finished his testimony, after defendant had cross and re-cross examined him regarding his identification of defendant's handwriting on the letter, the court excused Blacketer and made defendant's right to recall him contingent on his availability. Since defendant had already cross-examined Blacketer regarding his identification of the letter there was no need to have him recalled as the defendant's witness on this subject.

Defendant now argues, however, that he was prejudiced by the denial of the adjournment because it prevented him from calling Blacketer to give testimony impeaching Taylor's statement of ignorance of the charge on which Hendrickson was in jail when the letter was written. This, of course, would be forbidden extrinsic evidence to impeach Taylor's testimony on a collateral matter. See 3 Wigmore Evidence § 1001–1003 (3d ed. 1940).

In any event, the denial of the motion for adjournment was peculiarly a matter for the discretion of the trial judge,[3] and

3. Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377 (1940); United States ex rel. Drew v. Myers, 327 F.2d 174, 181 (3 Cir. 1964), cert. denied 379 U.S. 847, 85 S.Ct. 88, 13 L.Ed.2d 52; United States v. Williams, 254 F.2d 253, 254 (3 Cir. 1958).

in the circumstances of this case there is no ground for our interfering with it.

The judgment of the district court will be affirmed.